ELISHA WARFORD and others, Lessee, vs. RICHARD
COLVIN.

Probate of a will disposing of both real and personal property is, as to the per-
sonalty, final and conclusive, but since the Act of 1831, ch. 315, and upon
the true construction thereof in connection with previous legislation on
the same subject, such probate, whether in common form or on plenary
prceedings by allegation, answer and proof, or on the finding of a jury upon
issues sent to a court of law for trial, is, as to the realty, but prima facie
evidence of the validity of the will; the heir at law may bring his eject-
ment for the land notwithstanding such probate.

Probate means proof of the will by the proper tribunal, and the law gives
effect to the probate without reference to the manner of admitting the will
to record.

The obvious purpose of granting issues is to enable the orphans court to ad-
vertise itself of the real facts of the case, which, when ascertained are
the basis of the court's final action in admitting or rejecting the will.

The finding of a jury on issues amounts to nothing till acted on by the court
which has power to admit or reject the paper; it has, in the absence of a
final, effective act of the court itself, on the whole case, no greater force
than the evidence of witnesses rendered in the orphans court on plenary
proceedings.

The verdict of the jury on certain issues cannot be segregated from the rest
of the proceedings, and relied on as conclusive as to the facts so found,
when the order of the court, acting on such finding, and admitting the will
to probate, by a final act of jurisdiction, would be merely prima facie evi-
dence of the will.

One portion of the record cannot be so segregrated from the rest as to give
greater effect to a part than the whole would be entitled to, if relied upon
as the final judgment of the court upon the subject matter.

The issues at law are merely in aid of the jurisdiction of the orphans court,
and the affirmance by the Court of Appeals, of the rulings of the court of
law upon the trial of such issues, adds nothing to the force of the
proceeding as a judicial act; it is all the while a proceeding within the
probate powers of the orphans court.

When the Act of 1831, ch. 315, speaks of probate, it is to be understood as
referring to the act of the court or register, as the case may be, and not to
any part of the proceedings on which the probate may be allowed.

APPEAL from the Superior Court of Baltimore City.

Ejectment for various pieces or lots of ground in the city of
Baltimore, brought on the 24th of April 1856.   Plea, non cul.
The lessors of the plaintiffs, (the appellants) claimed title as
heirs at law of Rachel Colvin, deceased, and the defendant

(the appellee) claimed as *devisee* under *her will,* executed on the 6th of April 1848.

*Exception.* It was admitted that Rachel Colvin died seized of the property in dispute, and the lessors of the plaintiff offered evidence tending to prove they were her heirs at law, and then rested. The defendant then offered in evidence a copy of the last will and testament of the said Rachel Colvin, bearing date the 6th of April 1848, and of the *probate* thereof duly certified under the official seal of the Register of Wills of Baltimore city. This will disposed both of *real* and *personal* property, and by it the testatrix appointed the defendant, Richard Colvin, her sole executor, and made him the sole residuary devisee and legatee of both her *real* and *personal* estate. The defendants also offered in evidence certain proceedings in the Orphans Court of Baltimore city, from which it appears that when this will was propounded for probate in that court by the executor, certain parties, *including the lessors of the plaintiff,* as next of kin and heirs at law of Rachel Colvin, filed petitions or *caveats* against admitting it to probate, which were answered by the executor, and thereupon certain issues were framed and sent by that court to the Superior Court of Baltimore city for trial, among which were the following:

"1st. Whether the said instrument of writing, purporting to be a will of Rachel Colvin, dated the 6th day of April 1848, was executed and published by the said Rachel Colvin as her last will and testament, when she was of sound and disposing mind and capable of executing a valid deed or contract.

"2nd. Whether the said instrument of writing, purporting to be a will of said Rachel Colvin, dated the 6th day of April 1848, was executed by the said Rachel Colvin under the influence of suggestions and importunities of some person or persons when her mind, from its diseased and enfeebled state, was unable to resist the same."

The Orphans court directed that at the trial of these issues, the parties filing the petitions or *caveats* should be plaintiffs and Richard Colvin defendant. Upon suggestion that an impartial trial could not be had in the Superior court, the record

Warford, *et al.*, lessee, *vs.* Colvin.

containing the proceedings was transmitted to the Circuit court for Baltimore county, and, upon trial there, the *jury* found in *favor of the caveatee* upon all the issues. At this trial, exceptions were reserved by the caveators to several rulings of the court, and an appeal was taken by them, and these rulings were *affirmed* by the Court of Appeals. (7 *Md. Rep.*, 582.) The Orphans Court of Baltimore City then rendered a *final decree, confirming* the findings of the jury on all the issues, and *ordered* and *directed* this will to be *admitted to probate* as the last will and testament of the said Rachel Colvin.

The defendant further proved that after these proceedings were had in these several courts, he entered into possession of the property now in dispute, as devisee under said will, and has thenceforth remained, and now is in the possession of the same. It was admitted that the now lessors of the plaintiffs are all of them some of the same persons who were the caveators to the will mentioned in the above proceedings, and that the now defendant is the same person who was the caveatee named in said proceedings.

The defendant, by his counsel, then maintained and insisted and prayed the court to instruct the jury, that the proceedings so as aforesaid given in evidence are, as against the lessors of the plaintiff, not merely *prima facie* but conclusive evidence that the paper writing set out in said proceedings, purporting to be the will of said Rachel Colvin, dated the 6th of April 1848, was executed and published by the said Rachel Colvin as her last will and testament, and when she was of sound and disposing mind, and capable of executing a valid deed or contract, and that the same was not executed by the said Rachel Colvin under the influence of suggestions and importunities of some person or persons, when her mind, from its diseased or enfeebled condition, was unable to resist the same.

This instruction the court (LEE, J.) granted, and to this ruling the lessors of the plaintiff excepted, and the verdict and judgment being against them, appealed.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*G. L. Dulany* and *Wm. Price* for the appellants.

1st. The rule rendering a former judgment conclusive requires four things: 1st. That it should be directly upon the point. 2nd. That the same point be involved in the second suit. 3rd. That the parties be the same. 4th. That the former judgment be not only direct, but also final and conclusive, in the court of which it is a judgment, upon the subject matter. 1 *Starkie's Ev.*, *(Ed. of* 1826,) 190, 205. 3 *Cow. & Hill's notes to Phill. Ev.*, *(2nd Ed.,)* page 826, *note* 586. 5 *H. & J.*, 42, *Wicke's Lessee vs. Caulk.* 7 *Martin's Lou. Rep.*, 274, *Abat, et al., vs. Songy's Estate.* In the present case the third requisite is wanting, the parties not being the same, for in the former suit Richard Colvin was sued as *executor* by the appellants as *distributees*, while here he is sued as *devisee* by the appellants as *heirs at law*, and different *capacities* constitute different persons. 2 *Bland*, 445, *Tilly vs. Tilly. Ibid.*, 108, *Binney's Case.* 1 *Starkie's Ev.*, 201. *Select Cases in Chan.*, 30, *Coppin vs. Coppin*, and same cases in 2 *Peere Wms.*, 295. 1 *Eq. Cases Abr.*, 8, *Meliorucchi vs. Royal Exchange Assurance Co.* 1 *Ves. Sen.*, 283, *Johnson vs. Mills. Anstr.*, 477, *Ward vs. Northumberland.* 7 *Term. Rep.*, 350, *Rann vs. Hughes.*

2nd. Nor is the judgment by the orphans court granting probate conclusive in the case of real estate. In England, during the Saxon supremacy, there was no distinction whatever between the lay and ecclesiastical jurisdiction. The County Court, over which presided the Bishop of the Diocese, and the Aldermen, or in his absence the Sheriff of the county determined all causes, whether civil or spiritual. But after the Conquest, William the Norman willing to gratify the monasteries and foreign clergy, who had warmly espoused his title, separated the two jurisdictions and ordered that all ecclesiastical questions should be thereafter tried before the Bishop alone. The old system was restored by Henry I. upon his accession to the throne. It continued however but a short time, having been overthrown by a synod convened at Westminster, in the third year of this king's reign, which or-

Warford, *et al.*, lessee, *vs.* Colvin.

dained that no Bishop should attend the discussion of temporal causes. The separation being thus rendered final and complete, the clergy began to consider in what way they might increase the power of their courts. By that charter of the Conqueror, which introduced the new distribution of justice, it had been expressly declared that the spiritual courts should entertain jurisdiction over all bequests to pious uses. Afterwards when Henry I. was induced to direct in his coronation charter, that the goods of an intestate should be divided *pro salute animæ*, this immediately made all intestacies ecclesiastical causes as much as bequests to pious uses had been before. As the ecclesiastical courts had thus the disposition of intestates' effects, the probate of wills of course followed; for it was thought just and natural that the will of the deceased should be proved to the satisfaction of the prelate, whose right of distributing his chattels for the good of his soul was superseded thereby. These encroachments upon their ancient jurisdiction were viewed with great jealousy by the ordinary tribunals of the realm, and where a will was of a mixed nature, concerning both real and personal property they absolutely prohibited the ecclesiastical courts from taking any probate. Afterwards prohibitions *quoad* the real estate were granted. But at length the spiritual courts were allowed to take probate of wills disposing of both real and personal property, but the probate, so far as lands were concerned, was rejected by the common law courts as being no evidence. 2 *Bl. Com.*, 494. 3 *Do.*, 61, to 97, *Bac. Abr. Tit. Ecclesiastical Courts.* 2 *Greenlf. on Ev.*, sec. 672. 1 *H. & McH.*, 419, 423, *Smith's Lessee vs. Steele.* About the time the law was settled as above stated, the first testamentary acts were passed in this State, and the same construction prevailed here, that the commissary under the acts should proceed to take probate of the will although it contained a disposition of real estate. By the Act of 1715, ch. 59, sec. 2, the powers of the probate judge were carried a step further than in the mother country, for by it he was authorized to take probate or caused to be proved any last will or testament within the province, although the "same concerned title to lands." 1 *H. & McH.*,

423. 2 *Bland*, 86. With respect, however, to the effect to be given to the probate of a will containing a disposition of real estate there is some difference between the law of England and that of Maryland. There, as we have seen, such a probate, so far as the realty is concerned, has no effect whatever, but in this State it has always been considered *prima facie* evidence, but it has never been held to be *conclusive*. 2 *Bland*, 86, *Towshend vs. Duncan*. 1 *H. & McH.*, 419, *Smith's Lessee vs. Steele*. Ibid., 262, *Carroll's Lessee vs. Llewellin*. 4 *H. & J.*, 141, *Massey vs. Massey*. 1 *H. & J.*, 533, *Cheney vs. Watkins*. 3 *Bland*, 479, 481, *Randall vs. Hodges* These cases, with the exception of the last cited, were decided prior to the Act of 1831, ch. 315, by the first section of which it is expressly declared that the probate of a will, so far as it relates to real estate, shall be *"only prima facie* evidence" of its validity, and they show that even prior to that Act it was the settled law of this State—settled by the decision in *Massey vs. Massey*—that probate of a will is but *prima facie* evidence in favor the devisee, as against the heir at law. See also as to the construction of the Act of 1798, the case of *Darby vs. Mayer*, 10 *Wheat.*, 470, 471.

3rd. The fact that probate was decreed in conformity with the finding of a jury upon issues transmitted from the orphans court cannot render it any more conclusive. The practice of directing issues is borrowed from chancery and Ecclesiastical Courts, and existed in this State prior to any legislative action on the subject (4 *Md. Rep.*, 394, *Pegg, et al., vs. Warford.*) It is now regulated by the Act of 1798, ch. 101, sub. ch. 15, secs. 16, 17, and sub. ch. 8, sec. 20. By these sections the orphans court in all plenary proceedings, upon the requisition of either party is bound to make up issues and transmit them to a court of law, where the same proceedings are to be had as in the case of a suit originally instituted therein, and a certificate of the court or any judge thereof, under the seal of the court, of the finding of the jury, is made obligatory upon the orphans court. Now, there is nothing whatever in these sections from which even a presumption can be deduced that it was the intention of the Leg-

68    v. 14.

islature to increase by the provisions contained therein, the *jurisdiction* of the orphans courts. The objects for which they were enacted was simply to enable those tribunals to advertise themselves of the facts involved in cases properly falling within their cognizance, (4 *Md. Rep.*, 393,) and the reason why the same privileges were extended to the parties in the trial of issues, to which they were entitled in cases where the suit had been originally commenced in the court of law, was, because the Act having made it incumbent upon the orphans court to take the verdict of the jury as conclusive upon the facts thereby found, there would have been a great defect in the administration of justice, if every precaution known to the law had not been provided which might conduce to a proper ascertainment of *those* facts. 1 *Binney*, 446, 447, *Vasnant vs. Boileau.* Prior to the passage of the Act of 1798, or, at least, the law of 1777, ch. 8, sec. 9, the orphans court was not bound by a single verdict any more than a court of Equity. 4 *Md. Rep.*, 393. But granting the presumption to be a probable one, yet it would be overthrown by sub. ch. 15, sec. 20, which declares that the orphans court "shall not *under pretext* of incidental powers, or constructive authority, exercise any jurisdiction whatever, not expressly given by this Act, or some other law." In *Scott vs. Burch*, 6 *H. & J.*, 79, Dorsey, J., after having noticed this provision, proceeds to remark: "To avoid the necessity of a recurrence to incidental authority, the powers of the orphans court, both in relation to the subject-matter of its jurisdiction and the forms of its proceeding, are declared with the most formal and precise minuteness." But, apart from any, express limitation, orphans courts are confessedly limited and inferior jurisdictions; to a great extent the mere creatures of the Legislature, being indebted to express statutory enactments for the most minute and subordinate details of the process necessary to the exercise of their legitimate functions; in short, for every power deemed strictly incidental to other tribunals. 6 *H. & J.*, 67, 79, *Scott vs. Burch.* 2 *H. & G.*, 122, *Brodess vs. Thompson.* 9 *Gill*, 91, *Townshend vs. Brooke.* 4 *Md. Ch. Dec.*, 452, *Conner vs. Ogle.* 6 *Md. Rep.*, 352, *Lowe vs. Lowe.*

And such appears to be the law with regard to probate courts in other States. 4 *Cow. & Hill's Notes to Phill. Ev.*, (3rd Ed.) *p*. 64, *note* 42. But there is still another light in which this subject may be viewed. If the doctrine that the Legislature, by the provisions contained in the Act of 1798, intended inferentially to increase the jurisdiction of the orphans courts be allowed to prevail, then the common law courts, by a mere presumption, would be stripped of a portion of their authority contrary to the well recognized principle that the jurisdiction of superior courts cannot be divested or abridged, except by the express negative words of a statute, or, at least, by express terms or necessary implications. 3 *Yeates*, 480, *Burginhofen vs. Martin*. 2 *Sergt. & Rawle*, 363, *Overseers vs. Smith*. 1 *Gill*, 349, *Tomlinson's Lessee vs. Devore*. 2 *Rawle*, 369, *Commonwealth vs. M'Closkey*. 4 *Term. Rep.*, 116, *Shipman vs. Henbest*. The question, therefore, is at last a question of *jurisdiction*. The trial of issues gives no greater effect to the probate than it would have if made in any other way, for in a trial of issues by a court of law, the court trying them is still acting within the jurisdiction of the court which grants them, and the fact that an appeal is allowed, in no way enlarges that jurisdiction—the appellate court in deciding such an appeal is still acting within the jurisdiction of the orphans court. 1 *Gill*, 29, *Stevenson vs. Reigart*.

4th. If the transmission of issues can render a decree of the orphans court, granting probate, conclusive, then, by parity of reason, in cases of accounts, and in all other cases where the judgment of that court is only *prima facie* it might be made conclusive, simply by making up issues to be tried. But even if it were granted, that in the case of accounts, the fact that there were issues, could give greater efficacy to the action of the orphans court, yet it would not follow that the same would hold with reference to the probate of a will devising real estate, because such probate by the express terms of the Act of 1831, ch. 313, sec. 1, is made *"only" prima facie* evidence. With respect to this Act it is to be observed, that it is not merely declaratory of the law as it existed previously to its passage. The insertion of the word

Warford, *et al.*, lessee, *vs.* Colvin.

*"only"* makes it restrictive in its character. The object of the Legislature seems to have been to prevent encroachments, under any pretext whatever, of the orphans court upon the jurisdiction of the courts of common law. It should therefore be interpreted in such a way as most effectually to accomplish this purpose. Now, *"probate"* being a technical word according to a well established rule of construction must be interpreted in its technical sense. What then is its legal meaning? When thus used it signifies a copy of the original will under the seal of the court, with a certificate of its having been duly proved. 3 *Bland*, 479, *Randall vs. Hodges.* 2 *Bl. Com.*, 508. 1 *Jarman on Wills*, 211, 213. 1 *Starkie's Ev.*, (*Ed. of* 1826,) 247. The definition of a word may always be substituted in the place of a word itself. This substitution being made in the present instance, the Act of Assembly will read: "A copy of an original will, under the seal of the court with a certificate of its having been duly proved, shall be taken and deemed only as *prima facie* evidence." This copy, however, cannot be granted until every thing respecting either the validity or execution of the will has been settled. It has nothing, therefore, to do with the *manner* in which the court may come to a conclusion upon these points. Such being the case, whether the orphans court have determined that the will is valid and properly executed, unassisted by any other tribunal, or have resorted to a court of common law, for the purpose of acquiring more full information concerning the facts of the case, can make no difference in the signification of the word *"probate."* This Act of 1831 was carefully drawn. Its primary object was not simply to confer upon the orphans court power to take probate of wills of realty, but to subject executors who have power given them by wills to sell real estate, to the jurisdiction of the Orphans court, and it confers the power of taking probates of wills of realty as an additional power commensurate with the new jurisdiction thus given to the orphans court, and it does this for the protection of executors. By its first section it affirms: 1st, that probate before this Act established wills of personalty only; 2nd, that prior to this Act probate did not establish a

will as to realty; and 3rd, that the orphans court prior to this Act had no power to establish a will as to realty.    It then establishes a new rule and confers a new power, viz: that the orphans court may take probate of a will of realty, but makes such probate *prima facie* evidence *only*.    These latter words cannot be reasoned out of the statute—such probate is *prima facie* evidence *only*, which means that it is good till the *heir at law* comes to dispute it.    If issues as to the validity of a will of realty sent from the orphans court for trial are *conclusive* when the finding of the jury on them is certified, what becomes of the issue of *devisavit vel non*?    It is forever gone: and yet the 16th section of this Act provides for the issue of *devisavit vel non*, notwithstanding the probate of the orphans court.    This law also provides for the *deposit* of the *original will* in the orphans court, and for the production thereof in any issue of *devisavit vel non*, or in any other action at law, which must mean in any action of ejectment brought by the heir at law, for such an action is a local action, which may be brought in a different county from that in which the will may be *deposited*.    There is nothing in this Act confining the effect of the probate to such as are taken before the register, or before the court without contest: it applies to *all* cases of probate.    12 *Md. Rep.*, 158, *Michael vs. Baker*.

5th.  It has been expressly decided that the judgment of a probate court granting probate *in conformity with the finding of a jury upon issues*, is no bar to an action of ejectment subsequently brought by the heir or devisee to try the title to real estate.    4 *McCord*, 217, *Crosland's Exc'rs vs. Murdock*.    4 *Sergt. & Rawle*, 192, *Spangler & wife vs. Rambler*.    1 *Yeates*, 87, *Walmesley's Lessee vs. Read*.    5 *Rawle*, 80, *Smith vs. Bonsall*.    The *Pennsylvania* authorities cited are entitled to so much the more weight on account of the close resemblance which the testamentary law of that State bears to that of Maryland with reference to the point now under consideration. *There*, as here, the probate of a will, so far as real estate is concerned operates only as *prima facie* evidence.    (2 *Greenlf. on Ev.*, sec. 672, *note* 2.)    The issues, when found and returned, are obligatory upon the Register's Court, (4 *Sergt. &*

*Rawle*, 192,) and, lastly, there may be an appeal, as with us, from the court to which the issues are sent to be tried.  1 *Binney*, 446, 447.  It may be well to call the court's attention to the fact that the law upon the subject of the jurisdiction of probate courts, is by no means uniform throughout the country.  In perhaps all the States, with the exception of Maryland, New York, New Jersey and South Carolina, these courts possess a jurisdiction concurrent with, and in *some*, exclusive of the courts of common law.  Thus, in Massachusetts, Maine, Vermont, New Hampshire and Michigan, it is expressly provided by statute, that, "No will shall be effectual to pass either *real* or *personal* estate, unless it shall be duly proved and allowed in the probate court."  Such, also, is the law in Ohio, Rhode Island, and probably in some other States.  1 *Jarman on Wills*, 211, 214.  2 *Greenlf. on Ev.*, sec. 672 and *note*.  3 *Cow. & Hill's Notes to Phill. Ev.*, *(2 Ed.,) pages* 1347 to 1349, *note* 928, and *page* 861.  It follows, therefore, that cases decided in those States where the probate courts have more enlarged powers than with us, cannot be cited as having any effect upon the present question.  In Maryland, the right of the heir at law to bring his ejectment, notwithstanding probate of the will, has always been regarded as a sacred right.  Since the decision in *Massey vs. Massey*, no trace of a questioning of this right can be found in all our judicial records, for the reason that both the *bar* and the *bench* have regarded that decision as finally and conclusively settling the law of this State in favor of the right.  In the trial of an ejectment the heir cannot be concluded or put off by a *copy* of the will.  He has the right to insist upon the production of the original will, so that he may *cross-examine* all the attesting witnesses to it, for they are the witnesses of the other side; and in such a trial the original will must be produced in court.  *Gressley's Eq. Ev.*, 123 to 124.  When he comes thus into a court of law—a court of general jurisdiction—its jurisdiction cannot be divested or abridged, nor its hands tied by a decree of a court of inferior jurisdiction.  2 *Smith's Lead. Cases*, 439, *et seq*.  The heir may bring as many ejectments as he pleases.  One trial in a court of law in such an action will not conclude him.

In the second ejectment he is not precluded by the *verdict* of the *jury* on the *facts* in the *first.* 5 *H. & J.*, 245, *Hammond vs. Ridgely.* The position contended for on the other side would introduce tremendous changes into the law of Maryland in reference to titles to land, and it is submitted that some stronger reasons than those yet adduced, must be brought to the consideration of this court before it will adopt such a view of the law. The orphans court, at one period, had the power to call a' jury into that court to try issues. This law was repealed by the Act of 1798, and now either party can require issues to be sent to a court of law for trial. Then, according to the position taken on the other side, the conclusive effect of a judgment of the orphans court will rest upon the *caprice of parties,* and not upon the *jurisdiction* of the court itself.

6th. The verdict, when disconnected from the decree of the orphans court, cannot be regarded as a bar, or given in evidence as conclusive of the question thereby determined, because it is an undoubted principle that a verdict without a judgment, or in the case of issues, without a decree, is no evidence whatsoever. *Bull. N. P.,* 234. *Gilb. Ev.,* 38. 3 *Carr. & Payne,* 192, *Godefroy vs. Jay.* "The judgment of the court is necessary to the determination of every suit. It is the *essential* part of the record; the verdict is only the *means* by which the court are enabled to render judgment." Granting the verdict to be admissible, it would be entitled to very little weight, *( Gilb. Ev.,* 32; 3 *Starkie's Eq., (Ed. of* 1826,) *page* 1279,) but it cannot be given in evidence apart from the decree. For the sole object of issues being to enable the orphans court to advertise itself of the real facts of the case, (4 *Md. Rep.,* 393,) and they being regarded as a part of the proceedings of that court, (1 *Jarman on Wills,* 222; *Jeremy's Eq. Pl.,* 296, 297; 11 *Ves.,* 509, *Bootle vs. Blundell;* 1 *Mood. & Malk.,* 109 to 111, *Highfield vs. Peake,)* it follows that the verdict and decree must be taken together, and that the former cannot be separated from the latter any more than the verdict from the judgment, where a case is wholly before a court of common law. See, also, on this point, 6 *How.,* 68, *Van Ness vs. Van Ness.* The grant-

ing of probate is a *judicial* act, and in its exercise it includes the whole power of the court, and is conclusive upon all subjects and parties within the court's jurisdiction, ( *Gressley's Eq. Ev.*, 336, 337; 12 *Wheat.*, 175, *Armstrong vs. Lear,*) and if the *probate* or *decree* itself be not *conclusive* to *disinherit* the heir, how can the *facts* leading to such *probate* or decree have that effect? The jury have no more power on the trial of issues than the orphans court has when depositions are taken before it on plenary proceedings. The effect of the *probate* is the same in both cases.

· 7th. It is a peculiarity of the action of ejectment, that the question involved is not settled by a single trial. If, however, the verdict of the jury, or decree of the orphans court, be conclusive in the present case, the appellants will be deprived of that advantage, and the lands of the heir at law will have passed away even without one ejectment suit, and that, too, by the decision of a court which has no jurisdiction over real estate. But it is a most equitable principle that the action of a court or jury never concludes, if the party is unable to exercise any privilege which he might have had by resorting to a different tribunal, or another form of proceeding. 5 *Md. Rep.*, 295, *Townshend vs. Townshend.* 1 *Starkie's Ev.*, *(Ed. of 1826,) page* 295. 5 *Rawle*, 89, *Smith vs. Bonsall.*

· *Wm. Schley* and *Reverdy Johnson* for the appellee:

The conceded facts in the case are that the appellants filed in the orphans courts for Baltimore city, *caveats* to the last will and testament of. Rachel Colvin, and issues were sent to the Superior court of Baltimore city for trial, and these issues were removed to and tried in the Circuit Court for Baltimore county. The issues were all found in favor of the caveatee, and the circuit court duly certified that it was satisfied with the finding of the jury and the rulings of that court on the trial of these issues, on appeal taken were in every particular affirmed by the Court of Appeals in 7, *Md. Rep.*, 582. The orphans court for Baltimore city then passed an order confirming the findings of the jury on all the issues, and directed the will of the 6th of April 1848, to be admitted to pro-

bate as the testament and last will of Rachel Colvin, and directed that the caveats should be dismissed. The appellants, the lessors of the plaintiff in the present action of ejectment, were all of them parties to the above proceedings as caveators, and the appellee was the caveatee. The appellee insisted in the court below that these proceedings were *conclusive* as against the appellants, that the will of the 6th of April 1848, *was executed and published* by the said Rachel Colvin as her last will and testament, and when she was of *sound and disposing mind and capable of executing a valid deed or contract*, and that the *same was not* executed *under the influence or suggestions and importunities, of some person or persons, when her mind, from its diseased or enfeebled state was unable to resist the same*, these being facts found by the jury upon the trial of the issues as above stated. The court below sustained this position and we now, in support of the instruction so given insist upon the following propositions:

1st. That the finding of the jury upon issues followed by the *judgment* thereon of the orphans court, is a final and conclusive adjudication in favor of the validity of the will, binding as a judgment *in rem* even as against persons not parties to the controversy.

2nd. That even if not to be considered as an adjudication *in rem* still the finding of the jury and the *judgment* thereon of the orphans court is a final and conclusive adjudication in favor of the validity of the will as against the appellants, as they were parties in fact to the proceedings.

3rd. That at all events, the finding of the jury upon the issues (the same having been the basis of a final judgment in the matter of the plenary proceedings which grew out of the *caveats*) is conclusive as against the appellants upon the *matters of fact* involved in said issues, and found by the jury, and the instruction asked for and given *goes only to this extent*.

It is not necessary, in order to sustain the instruction granted by the court below, that we should establish more than the last of the above propositions, for our prayer does not say that the will is established as against all the world, but it simply

says that the finding of a jury upon the trial of the issues is *conclusive* on the *points* that the will was duly executed by the testatrix when she was of sound mind and free from undue influence, and conclusive on these points only as against the present appellants, the property, the will and the *parties* being the same as in the case of the issues, and the parties suing and being sued in the same right then as now. Nor do we contend that under our Acts of Assembly a mere *ex parte* probate of a will disposing of both real and personal estate, has anything more than a *prima facie* effect as to the realty though it is conclusive as to the personalty, for in respect to personalty, both the Acts of Assembly and the decisions of our courts have declared that probate, or refusal of probate, by the orphans court, is conclusive upon all the world.    8 *G. & J.*, 391, *Negro John, et al , vs. Mortin.*

But where the case is contested on issues sent to a court of law for trial, the verdict of the jury upon these issues is conclusive and binding, as to the *facts* submitted by the issues and found by the jury, not only upon the orphans court, but *"on the whole world."* The 16th and 17th secs. of sub. ch. 15, and sec. 20 of sub. ch. 8, of the Act of 1798, ch. 101, provide for the transmission of issues from the orphans court to a court of law for trial, and direct that in the trial of such issues the court of law shall have the same power and shall proceed in the same manner as if the issue or issues were in a suit therein instituted. The principles of law applicable to the trial of issues from the orphans courts, and of issues to be *followed by judgments* are precisely the same, (9 *Gill*, 56, *Ramsay vs. Glass*,) and when the *facts* are found the orphans court, though having the power to consider other facts and circumstances affecting the question of probate, than those thus found, yet as to *these facts* it can receive no evidence contradicting them. So far as these facts may affect the question of probate *vel non* the court has no discretion, but is imperatively required to enter up judgment in conformity thereto, the finding in regard to the facts submitted is conclusive and —binding upon the whole world. 3 *Md. Rep.*, 462, *Cain vs. Warford,* 4 *Md. Rep.*, 393 to 396, *Pegg vs. Warford.*

*Ibid.*, 399, 400, *Warford vs. Van Sickle.* 9 *Gill*, 456, *Glass vs. Ramsey.*

In view of these legislative provisions and decisions of our own courts, it cannot be doubted that the trial of these issues was had before a court of competent *jurisdiction*, and that trial having been before a court of competent jurisdiction and the parties thereto being *the same* as in the present suit, what is the rule of the common law applicable to such a case ? In the case of *Outram vs. Morewood*, 3 *East.*, 346, it was decided that if a verdict be found on any *fact* or title distinctly put in issue, such verdict may be pleaded by way of estoppel in another action between the same parties, or their privies, in respect of the *same fact* or title. *Lord Ellenborough, C. J.*, there said, that a recovery in any one suit upon issue joined on matter of title is equally conclusive upon the *subject matter of such title*, and that a finding upon title in trespass not only operates as a bar to the future recovery of damages for a trespass founded on the same injury, but also operates by *way of estoppel* to any action for an injury to the same *supposed right* of possession; it is not upon the *recovery*, but upon the matter alleged by the party and *upon which the recovery proceeds* which creates the estoppel; the estoppel precludes parties and privies from contending to the contrary of *that point* or *matter of fact*, which having been once *distinctly put in issue* by them, or by those to whom they are privy in estate or law, has been, on such issue joined, solemnly found against them; the question is whether an allegation on record upon which issue has been once taken and found is between the parties taking it and their privies, conclusive according to the finding thereof so as to estop the parties respectively from again litigating *that fact* once so tried and found; none of the cases cited to the contrary negative the conclusiveness of a verdict found on any *precise point once* put in issue between the same parties or their privies. And in conclusion of that most masterly opinion, he says: "the authorities on the subject of protestation and *estoppel*, are, in our opinion, as well as upon the reason and convenience of the thing and the analogy of the law in other cases decisive, that the husband and wife,

Warford, *et al.*, lessee, *vs.* Colvin.

the defendants in this case, are *estopped* by the former verdict and judgment *on the same point* in the action of trespass to which the wife was a party, from averring that the coal mines now in question are parcel of the coal mines bargained and sold by Sir John Zouch." In *Kitchen vs. Campbell*, 3 *Wilson*, 308, it was said: "You shall not bring the *same cause* of action twice to a final determination; *nemo debet vis vexari*; upon this we found our judgment; and what is meant by the same *cause of action* is, where the *same evidence* will support both the actions, although the actions may happen to be grounded on different *writs*; this is the test to know whether a final determination in a former action is a bar or not to a subsequent action, and it runs through all the cases in the books both in real and personal actions." In *Hopkins vs. Lee*, 6 *Wheat.*, 113, it is laid down as a *general rule* "that *a fact* which has been directly tried and decided by a court of competent jurisdiction cannot be contested again between the same parties, in the same or any other court," and that this rule extends to matters litigated before competent tribunals in foreign countries, that it applies to sentences of courts of Admiralty, to ecclesiastical tribunals, and in short to every court which has proper cognizance of the subject matter, so far as they profess to decide the particular matter in dispute. To the same effect are the decisions in 1 *How.*, 148, *Bank of U. S., vs. Beverly;* 2 *How.*, 108, 110, *Porterfield vs. Clark;* 5 *Sandf.*, 134, *Birckhead vs. Brown;* 12 *Md. Rep.*, 550, *Beall vs. Brown's Admr.*, and numerous other authorities which might be adduced to the same point, as well as elementary treatises upon the law of evidence and estoppel. In the *notes* to *Doe vs. Oliver*, 2 *Smith's Lead. Cases*, the authorities are collected and commented on: see, also 3 *Greenlf. on Ev. sec.* 262. The rule to be deduced from all the cases is this: that where the *jurisdiction* of the court to try the facts is once established, the *verdict* on those facts, as long as it stands, is conclusive as between the same parties in every other court, and can no longer be contested by them.

Why is not the present case within this rule? By the Act of 1715, ch. 39, sec. 29, the commissaries were authorized

to take probate of wills of real estate, and the same power was given to the orphans courts by the Act of 1777, ch. 8, with the additional power to order issues and summon juries for the trial of the same.    The Act of 1798, ch. 101, makes provision for every case of a will disposing of *personal* or *real estate;* the same testamentary capacity is required in *each case,* but one standard being fixed, and, as far as capacity is concerned, it makes no difference whether the will be a will disposing of *real* or *personal* property.    This Act then provides what is to be done with *all wills;* they must be deposited with the Register for proof, and when so deposited, each and every will may be proved in the ordinary form, or upon plenary proceedings before the court itself, or upon *issues* sent to a court of law for trial.    Sub. ch. 8, sec. 20, is the first provision in regard to issues, and it has reference to a debt due the estate by the executor.    By it, the verdict and judgment on such issues are made *conclusive* as to the *existence* or *non-existence* of the debt, and that fact cannot thereafter be contested. Secs. 16 and 17, of sub. ch. 15, gives the court power in case of "*a contest,*" to bring all parties before it, by plenary proceedings, and upon the demand of either party, to make up issues and send them to a court of law for trial, and it is then enacted, that the power of the court of law, and proceedings thereto relative, shall be as hereinbefore directed respecting the trial of issues, that is, as in regard to a debt due the estate by the executor, and the orphans court *shall give* judgment on the finding of the jury.    From these provisions it is clear that a contest in relation to *a will* is placed upon the same footing as that in regard to a *debt* due by an executor; that the orphans court has no judicial discretion over the subject; they must award issues, and when awarded, they cannot go behind the finding of the jury upon the *facts.*  If the contest relates to the whole will, involving both realty and personalty, and issues are framed involving its entire validity, the court must decide the *facts* according to the finding of the jury, and if *that* is in favor of the will it must be admitted to *probate.*    It is conceded on the other side that the probate is *prima facie* evidence of the validity of the will as to real estate.    Why is

it *prima facie* evidence, save from the fact that the orphans court have *jurisdiction* over the question of probate of wills of real estate? The finding is conclusive upon the orphans court, not that the will is the will of the party, but as to the *facts* submitted to the jury, and is it not equally conclusive upon the parties? Why should it not be so? Why was the power to grant issues put into the law? It was to save the costs of going into chancery—to settle the question at once—to give the parties the right to try the case at once before a jury without an issue of *devisavit vel non* from a court of chancery or an ejectment at law. The power of the court of law in trying the issues is in every respect entirely *untrammelled;* the right to take *exceptions* and an *appeal* to this court are given. What more for the purpose of honest litigation could be asked? When, therefore, these parties went into the orphans court and asked issues as to the validity of this will to be sent to a court of law for trial, it must be presumed, and they must be held to have done so with a view of having the question then and there settled for all time. Suppose the finding of the jury upon these issues had been the other way. The orphans court would have been bound by them, and the will must have been set aside. Could this appellee, have then brought his action of ejectment, as devisee, and set up this will as his title to the land? If he is bound, why are not the other parties to these issues bound also?

None of the Maryland decisions, cited on the other side, have any application to the present case except that of *Massey vs. Massey,* 4 *H. & J.,* 141, and upon a close examination of the *facts* of that case, and the arguments and reasoning of the counsel by whom it was argued, it will not, we think, be found to decide any thing adverse to the position assumed by us in this case. There was no *opinion* of the court given in that case, and this court has said in *Edwards vs. Bruce,* 8 *Md. Rep.,* 387, that decisions, in which no opinions are filed, will not be regardeded as authority in other cases unless the similarity is so apparent as to leave scarcely a doubt in regard to the propriety of applying the principles clearly shown to have been *necessarily* involved in and settled by the questions

Warford, *et al.*, lessee, *vs.* Colvin.

actually decided. The facts of that case and the questions involved are entirely different from this. There was no question in that case as to the validity of the will; it does not appear by whom the *caveat* was filed, or whether issues were sent or not, and, indeed, from the nature of the case there could not have been issues, or even plenary proceedings. It was simply a case of *implied revocation* of a will by the subsequent birth of children. The orphans court decided that the will was *revoked* by the subsequent birth of children, a question which they had no power or authority to decide, because it was not within their *jurisdiction*, and having refused probate to the will *for this reason*, the court simply said that such a refusal would not estop the devisee from claiming under the will. The decision of the orphans court, that the will was revoked, was a mere *nullity*, and the question decided must necessarily have been merely that the orphans court had no *jurisdiction* over the subject of *implied revocations*. The other Maryland cases referred to are cases of probate in *common form*, and not on *issues*, and a probate in common form and on issues are totally different things. Nor does the case of *Van Ness vs. Van Ness*, in 6 *How.*, 62, decide any thing in favor of the appellants.

But it is said, on the other side, that the Act of 1831, ch. 315, has changed the law, whatever it may have been previously, and that by the express terms of that Act a probate of will is only *prima facie* evidence, as far as real estate is concerned. We do not so read this law. It professes to be a *supplement* to the Act of 1798, ch. 101, and does not profess to alter or restrict that Act in any one of its provisions, but rather to enlarge the powers conferred by it. The verdict on issues is left to stand precisely where it stood under the Act of 1798. If conclusive then, it is equally so now. Its first section is merely declaratory of what the existing law was in regard to probate of wills in *common form*. But, again, the 10th section of the Act authorizes executors who have power to sell real estate given them by wills, to sell and *convey* the same, and account in the orphans court therefor, in the same manner that an executor was previously bound to account in

that court for sales of personal estate.  Now the power to sell and convey land, under a will, and account therefor in the orphans court, implies a jurisdiction in that court to grant such a probate as will be effective to pass the title to the purchaser. How can this be effected, if that court has no power to grant a probate, upon issues, which will be conclusive and binding upon all persons?  Titles to land, since the passage of this Act, would be rendered insecure indeed, if the probate is to be but *prima facie* evidence of the validity of the will.

In conclusion we will refer to the following decisions of our sister States, in which this question has been expressly decided in favor of the views we have endeavored to present.　7 *Humph.*, 320, *Patton vs. Allison.*　8 *Yerger*, 186, *Hodges vs. Bauchman.*　4 *Dev.*, 430, *Redmond vs. Collins.*　4 *Iredell*, 335, *St. John's Lodge vs. Callender.*　11 *Iredell*, 49, *Benjamin vs. Teel.*　12 *Iredell*, 355, *Love vs. Johnston.*　10 *Grattan*, 358, *Schultz vs. Schultz.*　13 *Grattan*, 682, *Ballow vs. Hudson.*　10 *B. Monroe*, 474, *Tibbatts vs. Berry.* 20 *Verm.*, 65, *Woodruff vs. Taylor.*

Tuck, J., delivered the opinion of this court.

The object of the present suit is to recover real estate to which the appellants allege themselves to be entitled as heirs at law of Rachel Colvin, in the face of her will devising the same to the appellee, after it had been contested on issues framed under the Act of Assembly and admitted to probate by the orphans court.  The proceedings on the caveat, to which the appellants were all parties, as offered in evidence by the defendant, show that the merits of that controversy, embracing the mental capacity of the deceased and the question whether undue influence was exercised over her at the time of making the will, were fully passed upon by the court of law to which the issues were sent for trial, and by the Court of Appeals on exceptions taken at the instance of the caveators.  The question before us is, how far those proceedings are to be taken as final and conclusive on the questions to which we have adverted, to wit: the testamentary capacity of the testatrix, and the influences under which her will is said to have been made,

Warford, *et al.*, lessee, *vs.* Colvin.

it being asserted on the part of the appellee, in his prayer, that they are, as against the plaintiffs below, not merely *prima facie*, but conclusive evidence that the paper writing purporting to be and set up as her will, was executed and published by her, when she was of sound and disposing mind, and capable of executing a valid deed or contract, and that the same was not executed under the influence of suggestions and importunities which her mind, from its diseased or enfeebled state, was unable to resist; the appellants insisting, on the contrary, that in an action concerning her land, said proceedings are only *prima facie* evidence that the paper is her will.

It is certainly a very important case, involving, as it does, a large amount of property, and especially so, as affecting a well established fundamental principle of the law, that the merits of a claim once discussed and passed upon by a court of competent jurisdiction, and a final judgment obtained by either party, shall not be afterwards inquired into in another cause between the same parties. And, if we felt ourselves at liberty to apply the doctrine of estoppel, there is motive enough for doing so in this case, as well on grounds of general policy, as to prevent further costly and protracted litigation. But, after the best consideration we have been able to bestow upon the Acts of Assembly and adjudged cases having any bearing on the subject, we have not been able, in the face of the Act of 1831, ch. 315, to bring the case within the principle of the common law to which we have referred—a branch of jurisprudence that was fully and elaborately investigated at the bar, with a force of argument and illustration seldom exceeded in any tribunal.

The will under which the appellee claims title, disposes of both real and personal property. As to the latter the probate is final and conclusive—binding all persons. By the Act of 1715, ch. 39, sec. 29, (*Bacon's Laws, Deputy Com. Guide*, 4,) the commissaries were empowered to take probate, "even though the wills concerned titles to land." The Act of 1798, ch. 101, authorizes probate in the orphans courts, of wills respecting personal property or appointing an executor, there being nothing said of wills devising real estate only, or of such

70    v. 14.

as disposed of both kinds of property, in which respect it differed from the Act of 1715; nor is there anything said of the effect of probate. The construction, however, always has been, that, as to personalty, the proof of the will in the orphans court cannot be questioned elsewhere. What effect on the title to land probate of a will disposing of lands and other property had under the Act of 1798, need not now be determined, since the present case must be considered with reference to the Act of 1831, ch. 315, in connection with previous legislation on the same subject. And, conceding that prior to 1831, a will admitted to probate after the manner observed in reference to this will, would, on the general principles advanced by the appellee's counsel, have had a conclusive effect in behalf of the devisee as against the parties to the caveat, if we find the Act of 1831 *restricts such effect upon the rights of the heir at law,* the former Act must yield.

Upon considering this Act of Assembly, and collating its several provisions, we think the language, interpreted by itself, is too plain to admit of any other meaning than that placed upon it by the appellants' counsel. The first section provides that the orphans courts, and, in their recess, the Registers of Wills, shall have power "to take the probate of any will, testament or codicil, whether the same has relation to real or personal estate, in the same manner that the original Act (1798) authorizes the said courts or registers to take the probate of wills, testaments and codicils, containing any disposition, relative to goods, chattels or personal estate, *which said probate, as concerns real estate, shall be deemed and taken only as prima facie evidence of such will, testament or codicil.*" The design of the law-makers appears to have been to confer jurisdiction that had been denied by the Act of 1798, and though not as fully in effect as to land as, perhaps, was conceded to the commissary's probate under the Act of 1715, yet so far efficient as to throw the burden of proof on those who might set up a claim to land adverse to title under the will. By this Act probate is to be taken "in the same manner" as under the previous law, which we understand to imply that it may be in common form, or in the more solemn

form of a plenary proceeding, by allegation, answer and proof, or by the finding of a jury upon issues transmitted for trial to a court of law. Probate means proof of the will by the proper tribunal, and the law gives effect to the probate without reference to the manner of admitting the will to record. We said, in 3 *Md. Rep.*, 462, and 4 *Md. Rep.*, 393, that the obvious purpose of granting issues is to enable the orphans court to advertise itself of the real facts in the case. When ascertained they are the basis of the court's final action, in admitting or rejecting the will. The finding of a jury on issues can amount to nothing until acted upon by the court, which has authority to admit or reject the paper. It has no greater force than the evidence of witnesses rendered in the orphans court on a plenary proceeding, in the absence of a final effective act of the court itself upon the whole case before it.

It is said that the prayer was not that the proceedings were conclusive proof of the will, but merely of mental capacity and freedom from undue influence, and that, as against the plaintiffs, the finding of the jury is, at all events, conclusive upon these matters of fact. This seems to imply that if the appellee were relying on the proceedings as evidence of the will, they would be merely *prima facie* proof, which the appellants could rebut, and the inquiry arises, whether one portion of the record can be so segregated from the rest as to give greater effect to a part than the whole would be entitled to if relied upon as the final judgment of the court upon the subject matter. This, we think, cannot be done. The consequence would be to give to the verdict on the issues, a conclusive absolute effect on the rights of the parties, when the order of the court, whose province it is to receive the finding of the jury and proceed upon it by a final act of jurisdiction, would be merely *prima facie* evidence of the will; for it cannot be overlooked that the point of the appellee's prayer goes to the very foundation of the plaintiffs' pretensions as heirs at law, to wit, the supposed incapacity of the testatrix. The issues at law are merely in aid of the jurisdiction of the orphans court, and the affirmance by the Court of Appeals adds nothing to the force of the proceeding as a judicial act. It is all the while

a proceeding within the probate powers of the orphans court. *State vs. Reigart*, 1 *Gill*, 29. And when the Act of 1831 speaks of probate, it is to be understood as referring to the act of the court or register, as the case may be, and not to any part of the proceedings on which the probate may be allowed.

If that Act did not contain this clause, it might be intended as a necessary conclusion, that the Legislature designed to give to probate of wills of realty the same effect which had always been ascribed to probates of those disposing of personalty, or appointing an executor, upon the ground that they operate *in rem,* and bind all persons. 2 *Greenlf. Ev.,* sec. 672. But here there are qualifying words, which we must suppose were designed to have some effect, and, in the absence of anything in the Act to indicate the contrary, it is but reasonable to impute to the Legislature the purpose of limiting the effect of the court's proceedings, according to the import of the language employed.

The sixteenth section also shows that the action of the orphans court was not to be final. It makes the Register's office a place of deposit for wills of which probate shall have been taken, and provides for their being used at trials of issues, *"devisavit vel non,"* or at the trial of any issue involving the will. Whether this section has reference to issues from the Chancery court, or to issues sent from the orphans court, or to any case at law or in equity, is not clear, but it demonstrates plainly enough that further contests, involving the will, were contemplated as likely to arise in other courts, after probate had been taken by the orphans court, and no mention is made of the effect that the probate should have, when granted, after a contest.

An argument was predicated on the tenth section, which provides for the sale of lands by executors, as showing that the orphans court was to have greater power over wills of land than was conceded by the appellants' counsel; that is, that the power to executors to sell and convey, implied a jurisdiction to grant probate that would be effective to pass the title to a purchaser. Mere probate in common form would not have such conclusive effect as to lands. The words of the Act are too

plain for that construction: indeed, it is not claimed on the part of the appellee. If, therefore, this argument can be based on the tenth section, in aid of the present defence, the result would be, that a purchaser under a will admitted to probate upon issues, and the finding of a jury, would be protected in his purchase, when one claiming under a less formal mode of taking probate, might lose the land. We do not suppose that the Legislature meant so to discriminate between cases of the kind. The words of the law do not show any such purpose, and however we may agree with counsel as to the propriety with which a wider scope might have been given to one mode of probate over another, where the same questions had been passed upon between the same parties, as the Act of Assembly makes no distinction, but refers to probate generally, we can only treat it as a *casus omissus*, which courts cannot supply. 10 *Md. Rep.*, 278.

In giving this application to the Act of Assembly, we no more do violence to the maxim, *"interest reipublicæ ut sit finis litium,"* or to the doctrines of the law of estoppel, than does the common law itself, when it allows the validity of wills, as to land, to be questioned in actions of ejectment, after probate in solemn form. The ecclesiastical courts have no jurisdiction of matters concerning the realty, and the probate gives no validity to the will, as to such property, whether taken in common form or *per testes* after summoning all parties in interest, and a full hearing. In view of the principles of estoppel, as sought to be applied here, it can make no difference that this probate was granted after a finding on issues, for the rule does not depend on the mode of trial so much as on the jurisdiction and judgment of the court. A case heard and determined by submission to the court is as effective, as an estoppel, as if passed upon by a jury. Probate by the orphans court establishes the will as to personal estate, whether taken in one way or another; it has the same effect as a judicial act, when taken upon a plenary proceeding as after the finding of a jury on issues. And, as to land, the effect is not varied according to the mode of proceedings. The mere affidavit of the witnesses on propounding the will, the caveat, answer and

proofs on a plenary proceeding before the court without issues, and the finding on issues when framed, are but means of proving the instrument on which it is to be admitted to record or rejected.   It is the order of the orphans court, at last, to which we must look to ascertain what has been done on propounding the will, and, when its proceedings are relied upon, the Act says, that the probate, as to lands, must be deemed and taken only as *prima facie* evidence of such will.

Constrained by what we take to be the correct interpretation of the Act of 1831, ch. 315, we dissent from the ruling below, and reverse the judgment.

*Judgment reversed and procedendo ordered.*

(Decided August 13th, 1859.)