ISAAC RAMSAY AND HUGH JENKINS, EXC'RS OF GEORGE HUTSON, *vs.* ANDREW GLASS, JOHN GLASS, AND OTHERS. *June* 1850.

To entitle an appellant to a reversal of a judgment on the ground of error in the opinion of the court, it must appear to the appellate tribunal, that he has been or may have been injured thereby, and such liability to injury must appear upon the face of the record.

Where the record does not show that any testimony was given to the jury, on which the opinion of the court could have had the slightest operation, the appellate tribunal will regard such opinion as a mere legal abstraction, and no matter how erroneous it may have been, it will constitute no ground for the reversal of the judgment.

The principles of law applicable to the trial of issues from the orphans courts, and of issues to be followed by judgments, are precisely the same.

APPEAL from *Baltimore* county court.

*George Hutson* died in September, 1846, unmarried and without issue, leaving his mother, *Martha Hutson,* and one of the appellees, *Joseph Hutson,* his brother of the whole blood, and the other appellees, his brothers of the half-blood, besides other brothers and sisters.

On the 22nd of September, 1846, a paper purporting to be the last will and testament of said *George Hutson,* was exhibited to the orphans court of *Baltimore* county for probate.

By this paper, the testator devised to his sister, *Margaret Street,* $6,000 of city stock. To his uncle, *Isaac Ramsay,* $5,000 of city stock, and $5,050 of *Farmers and Planters Bank* stock. To *William A. Swift,* $1,000 of city stock. To *Samuel Chandler,* $2,000 of city stock. To *Robert Hutson, Joseph Hutson, Isaac Glass, Andrew Glass, Thomas Glass, William Glass,* and *John Glass,* each one dollar. All the rest and residue of his estate, real and personal, to be sold and equally divided among *Martha Hutson,* his mother, *Dr. Samuel B. Martin* and *Hugh Jenkins,* share and share alike. He then appoints *Isaac Ramsay* and *Hugh Jenkins* his executors. This paper was signed and sealed by said *George,* in presence of three witnesses, and was on the same day, (22nd

of September, 1846,) admitted to probate, as his last will and testament, upon the usual oaths of the subscribing witnesses, and letters testamentary granted to the executors therein named.

Afterwards, on the 23rd of March, 1847, the appellees filed a *caveat* against this paper, praying that the probate thereof may be revoked, and the letters testamentary recalled, for reasons sufficiently appearing from the issues afterwards framed. The executors having answered this *caveat*, the following issues were made up and sent to *Baltimore* county court for trial, the appellees being made plaintiffs and the said executors defendants in the trial thereof.

1st. Whether said *George Hutson*, at the time of signing said paper or instrument of writing, purporting to be his last will and testament, was of sound and disposing mind, and capable of executing a valid deed or contract?

2nd. Whether, at the time above mentioned, the said *George* was urged to sign said paper by importunities of the defendants, or either of them, which he was too weak to resist, under circumstances which left him not free to act in the disposition of his estate?

3rd. Whether the signature of the said *George Hutson* to said paper, was his own free and voluntary act, to which he was induced, with a knowledge of the contents thereof, and without the exercise of any undue influence of the defendants, or either of them, which undue influence, in his then situation of body and mind, he was incapable of resisting?

4th. Whether the execution of said paper by the said *George*, was procured by fraud, or fraudulent misrepresentations, by the defendants, or either of them, or by others, acting with their privity or by their direction?

5th. Whether the said *George*, at the time of signing said paper, in the situation in which he was placed, and the circumstances connected with its execution, was capable of knowing its contents, the manner in which it disposed of his estate, and of withholding his assent to the same?

6th. Whether the execution of said paper was procured by reason of undue influences, fraudulent devices, importunities,

impositions, misrepresentations and deceits, practised by the defendants, or their procurement, on the said *George?*

EXCEPTION. At the trial of these issues the caveators, for the purpose of shewing the mental incapacity of the said *Geo. Hutson,* deceased, at the date of the paper propounded as his last will and testament, produced a competent witness, *Joseph Ramsay,* who proved that he had been well acquainted with deceased in his lifetime for a number of years, and had frequently conversed with him; that deceased, at the age of fourteen, was silly and feeble in intellect, and that his mind became more feeble as he increased in years; that his conversation usually was not connected or sensible. This testimony was admitted without objection, and witness was then asked, whether, upon all his observations, the deceased in his lifetime, and during the term of the witness' acquaintance with him, was or was not, in the *opinion of witness,* of a sound mind, and capable of making a valid deed or contract? To which question the caveatees objected. The court, (FRICK, C. J.,) sustained the objection, and would not permit the question to be answered. The witness was then cross-examined on the part of the caveatees, and in answer to their inquiries, stated his opinions in regard to the mental capacity of the deceased in general, and to his capacity to execute a power of attorney or bond, and proved, that in his opinion, the intellect of the deceased had become worse since 1843.

Other witnesses were then produced on the part of the caveators, and, in their direct and cross-examinations, were permitted to state their opinions in regard to the mental capacity of the deceased without objection, but subject to the restraint or limit prescribed by the opinion of the court, expressed as aforesaid. The caveators at length produced *George Rogers,* a competent witness, who proved that he had been acquainted with the deceased for several years before his death, and had frequent conversations with him; and he gave in evidence all the particulars, (so far as he could recollect them,) of a conversation between the deceased and witness, in which the deceased attempted to explain a trap or contrivance he had devised for

catching squirrels; and also stated how he had prevented a squirrel from biting him. The witness was then asked, whether the conversations of the deceased were connected or rational? To which the counsel for the caveatees objected.

But the court overruled the objection, being of opinion, and so declaring, that a witness who had a conversation with the deceased in his lifetime, after detailing that conversation, so far as he recollects, may be required to say whether, in his opinion, such conversation was coherent or otherwise.

To which opinion of the court the caveatees excepted, and this exception the court signed and sealed.

Another bill of exceptions was prepared and tendered by the counsel for the caveatees, which the court refused to sign, but after hearing of the parties, made out a statement of the facts and certified them to the Court of Appeals. This bill and statement relates solely to the competency of *Samuel Martin,* one of the residuary legatees, as a witness on the part of the caveatees, and whether an assignment, proved to have been executed by him at a former trial of the case, must be produced at this trial, or its non-production accounted for. As no allusion is made to this exception in either of the opinions delivered in this case, it is not necessary to state it more at length.

The jury rendered a verdict for the caveators upon all the issues. The caveatees moved for a new trial, because the verdict was against the evidence, and contrary to the instruction of the court, and against the law of the case in other respects. But the court overruled this motion, and the caveatees appealed to this court.

The cause was argued before Dorsey, C. J., Chambers, Spence, Magruder and Martin, J.

By Gwinn and Nelson, for the appellants, and
By Thos. S. Alexander, for the appellee.

Magruder, J., delivered his opinion as follows:

More than one exception is to be found in the record in this

case. The appellee, however, objected only to what took place while *George Rogers* was under examination. He spoke of various conversations he had had with the deceased, and then of one conversation so far as he could recollect it. Whereupon he was asked, whether the conversations of the deceased were connected or rational? To this the caveatees objected, but the court overruled the objection. No exception was taken to this, nor does it appear what was the answer of the witness, or, indeed, that he did answer the question. Of course we are unable to tell whether, if the question was answered, the caveatee could possibly have been injured by that answer.

The exception, after stating that the court overruled the objection, proceeds: "being of opinion and so declaring, that a witness, who had a conversation *with the deceased in his life-time, after detailing that conversation, so far as he recollects,* may be required to say whether, in his opinion, such conversation was coherent or otherwise." To which opinion of the court, the caveatees, by their counsel, prayed leave to except.

In order to set aside a verdict obtained in any case, it must be made to appear to the appellate court, that the court below had given to the jury an instruction which was erroneous, and that by reason of that error the verdict might have been obtained.

As I read this exception, the opinion of the court, of which it complains, is not in truth an instruction to the jury, but a reason for overruling the objection of the caveatees—a reason addressed rather to the counsel than to the jury, and if so, of its correctness this court is not to judge.

It appears, too, in this case, that there were six issues tried, and the verdict of the jury was for the caveators on all of them. The testimony of the witness alluded to may have had some influence upon the minds of the jury, in deciding some of the issues, but there are other issues of themselves fatal to the paper offered for probate. The jury have said that this paper was procured by fraud, and if so, the verdict ought not to be dis-

turbed, even although testimony only applicable to other issues ought to have been excluded.

Without undertaking then to decide in this case, how far the opinions of witnesses are to be admitted in the trial of issues touching the sanity of a deceased person, I cannot think that in this case, and upon the exception taken as above, this verdict ought to be set aside.

DORSEY, C. J., delivered the opinion of this court.

From the view we have taken of this case, it is unnecessary to examine the question, whether the opinion of the court, as stated in the bill of exceptions, and from which the present appeal has been taken, be right or not? To entitle an appellant to a reversal of a judgment, on the ground that there is error in the opinion of the court, it must appear to the appellate tribunal, that he has been or may have been injured thereby. And such liability to injury must be apparent upon the face of the record. In the record before us no such liability is discoverable. It is not stated that any testimony was given to the jury, on which the opinion of the court could have had the slightest operation. The bill of exceptions does not shew, that any witness gave testimony, on which the opinion of the county court could have had the most remote influence or bearing. It is not stated in the bill of exceptions that any witness testified to the jury, that any conversation which he had with the testator was, in his opinion, "coherent or otherwise." The opinion expressed by the court below, therefore, was a mere legal abstraction, that could not have had any influence on the minds of the jury in forming their verdict, and, consequently, no matter how erroneous the court's opinion may have been, it constitutes no ground for the reversal of its judgment.

To warrant the reversal of the judgment for the reason assigned, this court must assume, without the slightest support from the record for so doing, two essential facts. The first, that a conversation with the testator, detailed by the witness, was, in his opinion, "coherent or otherwise;" and the second fact, that the witness thus giving evidence stated his opinion to

be, that the conversation was incoherent. If the opinion of the witness had been that the conversation was coherent, and there is nothing in the record to justify a contrary inference, the testimony would have been beneficial, not prejudicial, to the interests of the appellants, and, of course, furnished them no ground of complaint on the present appeal. Such an extraordinary assumption of facts not appearing in the record, to enable an appellate court to reverse a judgment before it, cannot be regarded as a legitimate inference, and is subversive of every principle of judicial courtesy. For it no authority has been produced, and it is not perhaps too presumptuous to say that none can be found. In speaking of this case as one in which the court below have given a judgment; technically speaking, we are not to be, literally, so understood; but we have thus spoken of it for more familiar illustration, the principles of laws applicable to the trial of issues from the orphans court, and of issues to be followed by judgments, being precisely the same.

On the appeal before us the decision of the county court cannot be reversed, and the finding of the jury upon the issues must be sustained.

JUDGMENT AFFIRMED.

CHAMBERS, J., dissented.