## JOHNSTON *vs.* JONES ET AL.

1. A bill of exceptions should contain only so much of the evidence as is necessary to present the legal question raised. When more than this is inserted in the bill it is an irregularity to be condemned as a departure from established practice, inconvenient and embarrassing to the court.

2 Where a series of propositions are embodied in the instructions of the court which are excepted to in a mass, the exception must be overruled if any one proposition be sound.

3 The right which the owner of a water-lot has to the accretions in front of it depends on its condition at the date of the deed which conveyed him the legal title, and cannot be carried back by relation to the date of a title-bond previously assigned to him, and under which he procured the deed.

4. Maps, surveys, and plats are not necessarily and of themselves independent evidence, and are therefore to be received only so far as they are shown to be correct by other testimony in the cause.

5. Where a lot had no water front, and the plaintiff who was the owner of it had therefore no right to any part of the accretions for which he was suing, and it is apparent from the record that the fact was so found by the jury, this court will not reverse for an error committed by the court below with respect to the rule by which the alluvium should be divided among those who *are* owners.

6. *Jones* vs. *Johnston*, (18 How., 150,) and *Deerfield* vs. *Arms*, (17 Pick., 45,) affirmed as laying down the rule to which this court adheres for measuring the rights of riparian proprietors in the accretions formed along the water line.

7. Where a lot was conveyed by A to B as having a water front, and reconveyed by B to A as having no such front, and afterwards conveyed by A to the plaintiff, a deed from B to the plaintiff made after suit brought cannot be given in evidence to show the right of the plaintiff to a water front, and consequently a title in the alluvium.

8. If there was a mistake in the original deed, the remedy should have been sought in chancery, by a proceeding against all parties interested; the rights of third persons cannot be affected by a private agreement and a deed made in pursuance of it.

9. A witness cannot be permitted to make a calculation founded upon a map which is not itself original and reliable evidence, and permission to ask a question calling for such a calculaticn is properly refused by the court.

10. The extent to which a cross-examination may be carried beyond what is necessary to exhibit the merits of the case, must be guided and limited by the discretion of the judge who presides at the trial, and is not the subject of review in a court of error.

11. This court will not interfere with the practice of the Circuit Courts concerning the order and time of introducing evidence, nor reverse a judgment for the rejection of evidence as rebutting, which ought to have been given in chief.

Writ of error to the Circuit Court of the United States for the northern district of Illinois.

William S. Johnston brought ejectment in the Circuit Court against John A. Jones and another for a part of the land formed by accretion on the shore of Lake Michigan, north of the north pier of the harbor of Chicago. The cause was tried in the Circuit Court, and a verdict and judgment were given for the plaintiff, when the defendant brought it up to this court by writ of error, where it was reversed, and a *venire facias de novo* awarded. The facts as they appeared upon the record at that time are fully stated in the opinion of Mr. Justice *Nelson*, 18 How., 150. On the second trial the same evidence was given, with no new additions, except the two documents pertaining to the plaintiff's title which are mentioned in the opinion of Mr. Justice *Swayne*. That opinion also contains a statement of the facts upon which the several rulings of the Circuit Court upon the admissibility of evidence were based, and quotes at sufficient length the instructions which were given to the jury. The verdict and judgment were in favor of the defendant, and the plaintiff took this writ of error.

*Mr. Wills*, of Illinois, for plaintiff in error, argued that the errors of the Circuit Court apparent on this record entitled the plaintiff to a reversal of the judgment on such radical

*Johnston* vs. *Jones et al.*

grounds as would insure to him the ultimate recovery of the property in dispute.

The defendant has always insisted that lot 34 never had a lake shore front. This has been his favorite line of defence. It is the fundamental question in the case, and if the fact be as the defendant alleges, then the plaintiff had no right from the beginning to the land he claims. This, however, is a question of fact not to be argued here, except as it arises incidentally in the discussion of the points of law ruled by the court.

If it be established that the lot (34) had originally a lake front, was it not conveyed with the accretions to the plaintiff by the deed of October, 1835? Was it intended to reserve any part of the land which had become attached to its eastern border? The whole of the accretions passed by the description, "Water lot 34, and the tenements and hereditaments thereunto belonging." Such was the manifest intent of the parties.

But if the deed of October, 1835, does not bear on its face the evidence of the parties' intentions to pass the accretions, then the deed of July, 1857, was admissible as evidence of the original intention to do so, and it was error not to receive it for that purpose.

If the accretion did not pass by the deed of 1835, and the deed of 1857 is not admissible for the purpose mentioned, then in falling back upon the deed of 1835 just as it is, it becomes important to know when the title of the plaintiff under that deed commenced. It began not at the date of the deed, (October 22, 1835,) but at the date of the title-bond of June, 10, 1835. This raises a new question of fact—raises it fairly—and the instruction which compelled the jury to exclude it from their consideration was erroneous. The jury should have been charged to inquire whether the lot had a lake front at the date of the title-bond; and if it had, to find a verdict for the plaintiff. The title which the plaintiff took under the deed related back to the date of the title-bond.

Even if all these points were against the plaintiff, he is entitled to recover against this defendant by virtue of his claim of title and his prior possession under his deed. The defend-

ant is a mere intruder upon the previous possession of the plaintiff.

The court did not allow the proper value to be given to the maps and surveys. A map referred to in a deed is part of the deed, and as much to be considered as if expressly recited.

The court should not have refused to let the plaintiff's counsel ask the witness Jones (a brother of the defendant) whether the defendant had paid him anything for lot 35 when it was conveyed. The power of cross-examination is the great test for the discovery of truth. The plaintiff was deprived of a clear right.

The testimony of Greenwood was rebutting, and it was erroneously regarded by the court as evidence in chief. But aside from this the court erred in excluding it when there was no allegation of trick, surprise, or injury which the plaintiff could suffer by receiving it out of the regular order.

The rule given to the jury for dividing the accretions among the several owners of the lots having lake fronts was entirely wrong.

*Mr. Fuller*, of Illinois, and *Mr. Carlisle*, of Washington city, for defendants in error. This cause has been tried by a jury under instructions from the judge who presided in the court below, couched in the very words of the opinion delivered in this case by Mr. Justice *Nelson*, and upon the issue which this court there determined was the only proper issue for the consideration of the jury. On that trial a verdict was rendered for the defendants below.

The plaintiff brings the case here, and directly questions the former decision of this court in this very case. He likewise assigns seven specific errors in the rulings of the court on the trial below, in the course of the trial.

Except a deed made by John H. Kinzie to the plaintiff in 1857, the titles of the respective parties are precisely the same as they were on all the former trials; and the facts out of which the controversy arose having occurred twenty-five years ago, are, of course, unchanged.

In the opinion of the court, in 18 Howard, 150, is a full

statement of the material facts in the case; and it will appear by examination of that opinion that the following propositions were stated and decided by this court as the law of the case :

FIRST. That both plaintiff's and defendant's lots were conveyed with express reference to the recorded plat of Kinzie's addition to the town of Chicago, which description was conclusive upon the parties until that reference was reformed. 18 Howard, 153.

SECOND. That the true issue to be tried by the jury was, whether or not, at the time of the deed to the plaintiff, lot 34 (plaintiff's) had a water line upon the lake north of the north pier of the Chicago harbor. 18 Howard, 157.

THIRD. That in dividing the accretion, the pier front of the accretion should be taken into account. 18 Howard, 157–8.

With these points decided by this court as the law of this case, the parties again went to trial, and the court below gave the instructions to the jury which are found in the record.

The issue of fact, indicated by this court as the only important question to be tried by the jury, was distinctly presented to the jury, who found the defendants not guilty; or, in other words, that the plaintiff's water lot 34, Kinzie's addition to Chicago, had not a water line on the east side north of the north pier of the Chicago harbor at the date of his deed, October, 1835.

This finding of the jury is conclusive upon the parties as to the question of fact, and leaves the plaintiff without any right or interest to question the rule of division of the accretion laid down by the court.

It is immaterial to him what that rule is; for he has nothing to be divided, and he should not trouble this court or these defendants to review the former decision upon this point, for a merely abstract and speculative purpose.

He is not harmed or helped by any decision of any question that does not, when decided, apply to his interests in this case; and for this, as well as other obvious reasons, we shall not discuss the former decision of this court upon this part of the case, holding it to be settled law.

The facts being unchanged, the law of the case, once declared, remains the law.

With the exception of the deed made since the commencement of this suit, every link in the chain of title, every deed of either party to the record, and every fact, remain the same.

Yet the plaintiff's counsel insists, in a voluminous printed argument of about one hundred pages, that this court should review and change its opinion upon those identical facts and deeds, already fully considered and solemnly pronounced.

This will not be allowed. In the language of Mr. Justice *Grier:* "It has been settled by the decisions of this court, that after a case has been brought here, and decided, and a mandate issued to the court below, if a second writ of error is sued out, it brings up for revision nothing but the proceedings subsequent to the mandate." *Roberts* vs. *Cooper*, (20 Howard, 481,) where several similar decisions of this court upon this point are referred to, all to the same effect.

So much for the general question; now examine the points peculiar to the last trial below.

1. It is an inflexible rule that the plaintiff in ejectment must recover, if at all, upon his legal title, as it stood at the commencement of the suit, or, at least, at the date of the demise laid in the declaration. *Goodtitle* vs. *Herbert*, (4 Term., 680;) *Wood* vs. *Martin*, (11 Illinois, 547;) *Pitkin* vs. *Yaw*, (13 Illinois, 251;) *Binney's Lessee* vs. *The Canal Co.*, (8 Peters, 218.)

If, therefore, the deed from Kinzie of 1857 was necessary to give the plaintiff the legal title to the premises sued for, it could not help him in this suit, because it was made since the action was brought. It was, however, offered as a volunteer reformation of the deed from John H. Kinzie to Robert A. Kinzie, made in 1835—not as conveying a title of itself, but as an enlargement of the estate and premises conveyed by that deed—to get rid of the decision of this court that the parties were bound by the references in their respective deeds to the recorded plat, until that reference was reformed, if it needed and was susceptible of reformation.

Instead of going into chancery to reform the deeds, where the mistake would be alleged and proven if it could be, and

all parties in interest brought before the court, the plaintiff went to a person who, twenty-two or three years before, had made a deed to defendant, Jones, of lot 35, and all "his interest east thereof," and under which deed Jones had ever since occupied and claimed to own the premises in dispute, and who had, at a subsequent date, conveyed to Robert A. Kinzie lot 34, according to the "recorded plat of Kinzie's addition," and from whom (Robert A. Kinzie) plaintiff had acquired his title, by the same description, and gets from him an instrument reciting that he intended to convey to said Robert A. Kinzie "all the accretions formed on the water line of lot 34," and that "disputes had arisen about the title to those accretions;" therefore, "to settle the same," he conveys them all for twenty-five dollars to the plaintiff, who then seeks to recover them by virtue of this deed made without notice to the defendants, or any one in interest with them, by means of an action of ejectment begun eight years before the deed was made.

2. Another exception arises upon the ruling of the court below, that it was incompetent for the witness Greeley to compute the rate and amount of growth of the accretion in 1834 and 1835, by his own calculations, based on Lieutenant Allen's maps and diagrams.

There was no error in this, because it was not alleged that there was any ambiguity in those maps themselves; and being admitted in evidence, it was for the jury to say what light they threw upon the issue on trial, and not for the witness. And besides, the maps themselves, not being positive, original evidence, could not properly be made the foundation of such evidence from the witness, which, at most, could only be matter of opinion based on hearsay testimony; or, *res inter alios acta.* The witness had no personal knowledge of either Lieutenant Allen, his maps, or of the accretion; and his opinion upon those matters was not competent testimony to go to the jury, who alone should draw any proper influences from the maps and reports which were in evidence.

3. The court refused to allow Captain J. D. Webster to testify what were his duties as superintendent of the harbor in 1841 and 1842, with a view of proving what were Lieutenant

Allen's duties as such officer in 1834–5, and thus adding to the weight, as evidence of Lieutenant Allen's reports and maps. In this the court below was right. It was not the proper way of proving what were the official duties of an officer of the Government, nor would it tend to prove what were Lieutenant Allen's duties eight years before, while superintending the building of the piers, or in any degree to prove whether plaintiff's lot had or had not a water line north of the north pier at the date of his deed.

4. The court below did not err in refusing to allow plaintiff's counsel to cross-examine Benjamin Jones in the manner proposed. Jones had testified in chief for the defendants; and plaintiff's counsel on cross-examination put the questions objected to, not to show that he was an incompetent witness, but to affect his credibility with the jury. This was wholly within the discretion of the judge who tried the cause. It is always within his discretion to control the cross-examination of witnesses, designed to affect their credibility. Ample opportunity was afforded plaintiff's counsel in this case; but whether or not a certain question should be put, and if answered, what its effect might be, was solely for the judge who tried the case to decide; and having exercised his undoubted authority to direct and control the cross-examination, his decision is not subject to revision here. *Teese et al.* vs. *Huntington et al.*, (23 Howard, 2.)

5. The court refused to allow the plaintiff to examine S. S. Greenwood upon anything not rebutting to the proof made by defendants. Plaintiff had closed his case, except the right specially reserved to examine G. S. Hubbard, as appears on page 194, printed record. But when it became his turn to offer rebutting evidence to defendant's proof, he proposed to accumulate testimony upon the main issue, by asking the witness Greenwood where the water line was, east of or upon lot 34. The court refused this, because it was not rebutting testimony; it related to the very point the plaintiff was bound to prove in the first instance, and having proved it as far as he desired, except as to the introduction of Hubbard, he rested, and, according to all rules, the door was closed against cumu-

lative proof from him on the points at issue, unless the court saw fit to open it. "The mode of conducting trials, the order of introducing evidence, and the times when it shall be introduced, are properly matters belonging to the practice of the Circuit Courts, with which this court ought not to interfere." *The P. & T. R. R. Co.* vs. *Simpson*, (per Story, J., 14 Peters, 448.) If the plaintiff wanted Greenwood's testimony on this point, he should have called him at first, or reserved the right to have done so later in the trial. Not having done this, he has no right to complain that the court applied to him the ordinary rules of practice in all common law courts.

6. The only remaining exception which we propose to consider, is the objection to the charges of the court relating to the weight which the various maps and plats were entitled to, as instruments of evidence. Except Lieutenant Allen's maps or diagrams, every map and plat offered and admitted in evidence, was made by a living witness, present on the stand at the trial of the case; and every fact in controversy was within the memory and knowledge of a cloud of living witnesses. Manifestly the maps were only properly admitted in evidence to explain, illustrate, and apply the testimony of the witnesses. Where was the water line, with reference to the east line of plaintiff's lot, at date of his deed? was the issue on trial. A witness could not make a map that would determine that issue more effectually than his statement on oath; and a map made anywhere, or at any time, was only valuable as proved to have been made by one competent to do so, and present to verify his work. It had no inherent, intrinsic weight as evidence. This disposes of all the maps allowed to go to the jury for any purpose except certain diagrams made by Lieutenant Allen in the years following 1834 down to 1839; and of these it seems sufficient to say, that it does not appear that his reports of soundings were within the sphere of his official duty, for what his official duty was nowhere appears in the case; and so they were not evidence according to the decision of this court, in *Ellicott et al.* vs. *Pearl*, (10 Peters, 412;) and, even if done officially, his acts could not bind or affect the rights of the parties to this suit.

But the issue was, where was the water line with reference

to the east line of plaintiff's lot 34 at the date of his deed, and not how deep the water of Lake Michigan was somewhere else; and neither the soundings nor reports of soundings at other places tended to determine the issue on trial. Besides, the maps were before the jury, to be judged of by them, in connection with the other evidence in the case. 1 Phillips on Evidence, Cowen & Hill's Notes, 236, 282, and 283; 1 Greenleaf on Evidence, sec. 139; 7 Carrington & Payne, 483; *Morris et al.* vs. *The Lessee of Hamus Neils*, (7 Peters, 554.) In the last case the court said that an ancient plat of the city of Cincinnati, though the only one in existence, and the only recognised plat of the city, was not conclusive upon the questions of boundary of lots in that city. This part of the case may be dismissed with the remark that when the exact and single issue of fact before the jury is kept in view, it becomes apparent that maps and plats of other places, and points relating to other dates and periods of time. could not, in the very nature of them, throw any light on that issue, and could only serve to apply the testimony of the witnesses to the premises in question. Not a single one of the maps or plats offered in evidence was referred to, as in any way connected with the titles of the parties, except the recorded plat of Kinzie's addition, and by that this court decided the parties are bound until it is changed. 18 Howard, 153.

Mr. Justice SWAYNE. This case was before this court at December term, 1855. It is reported as then presented, in 13 Howard, p. 250. The judgment of the Circuit Court was reversed, and the cause remanded for further proceedings. The action below was ejectment, brought to recover a part of the land formed by accretion on the shore of Lake Michigan, north of the north pier of the harbor, in the city of Chicago. The land in controversy was claimed to belong to water lot No. 34, in Kinzie's addition to that city. The plaintiff in error sought to recover it, in virtue of his ownership of that lot. Upon the last trial, many days were consumed in submitting to the jury the parol and documentary evidence of the parties. The former was printed as the cause proceeded.

At the close of the argument, prayers for instructions to the

jury were submitted by both parties. All the testimony given in the case, the instructions asked for by both parties, and the entire charge of the court as given, are embodied in the record. They make an aggregate exceeding four hundred and fifty printed pages. The bill of exceptions embraces all this matter. It commences with an introduction, setting forth that the whole of the printed evidence was made a part of it, and terminates with a supplement containing the exceptions taken by the plaintiff in error. Six of these exceptions are to the rulings of the court in excluding testimony. They are in this form:

"2. Also to the ruling of the court in excluding the testimony of Samuel S. Greeley, as stated on pages 133 and 134 of the printed report." The pages of the "printed report" do not agree with the pages of the printed record. The reference, therefore, affords no aid in finding the matter referred to.

The 8th exception is as follows: "Also to the charge of the court as contained on page 453, and as stated on page 462."

It is then stated that, in compliance with the rule of this court, and for the sake of greater caution, the plaintiff below "specially excepted on the trial, and the exceptions were allowed by the court," to the parts of the charge which follow.

The first part of the charge, as thus set out, contains a distinct, legal proposition. To this the plaintiff distinctly excepted. This was proper. Then follows nearly two pages containing the views and reasonings of the court, comments upon the evidence, and several legal propositions. They are followed by this exception: "To the instructions as given by the court to the jury, the plaintiff then and there excepted." Exception was also taken to the refusal of the court to give to the jury the instructions prayed for by the plaintiff.

It has been found irksome and inconvenient to the court to look through this record and find the parts that are necessary to be considered. The necessity of performing this office has imposed upon us a labor which would have been avoided if the bill of exceptions had been properly framed. In 2 Peters, 15, *Pennock and Sellers* vs. *Douglas*, Mr. Justice Story remarked upon the irregularity, inconvenience, and expense of putting

the entire testimony in a case into the bill of exceptions, and expressed the regret of the court that such a practice should prevail.

In 4 Howard, 297, *Zeller's Lessee.* vs. *Eckert and others*, Mr. Justice *Nelson*, in delivering the opinion of the court, said: "This mode of making up the error books is exceedingly inconvenient and embarrassing to the court, and is a departure from familiar and established practice." "Only so much of the evidence given on the trial as may be necessary to present the legal questions thus raised and noted, should be carried into the bill of exceptions. All beyond serves only to encumber and confuse the record, and to perplex and embarrass both court and counsel."

The court desires to put on record again its condemnation of this irregularity, and to express the hope that a better practice may prevail hereafter in all cases intended to be brought before this court for revision.

The 38th rule of this court, adopted at January term, 1832, directs that thereafter "the judges of the Circuit and District Courts do not allow any bill of exceptions which shall contain the charge of the court *at large* to the jury, in trials at common law, upon any general exception to the whole of such charge, but that the party excepting be required to state distinctly the several matters in law in such charge, to which he excepts, and that such matters of law, and those only, be inserted in the bill of exceptions, and allowed by the court."

The rule was not observed in this case. It is questionable whether the exceptions, in respect of the greater part of the charge, are so distinct and specific that this court, if the point had been made, could consider them. It is well settled, that if a series of propositions be embodied in instructions, and the instructions are excepted to in a mass, if any one of the propositions be correct, the exception must be overruled. 3 Seld., 273, *Hunt* vs. *Maghee*; 2 Kernan, 313, *Decker* vs. *Matthews*.

The point was not made by the defendants. We have, therefore, not thought it necessary to consider it. As it may arise hereafter in other cases, we have deemed it proper thus to call attention to the subject.

The same evidence substantially was given upon this trial which was given upon the former trial, as reported in 18 Howard. It would unnecessarily encumber this opinion here to repeat it. The only features claimed to be new by the plaintiff in error are—1st, the title bond of Robert A. Kinzie to Gordon S. Hubbard, of June 10, 1835, for lot 34, and other property therein described. Johnston, the plaintiff, became the assignee of this bond, and under it procured his deed of October 22, 1835, from Robert A. Kinzie, for lot 34. 2d. The deed from John H. Kinzie to the plaintiff, dated July 1, 1857. This deed was offered, but not received in evidence.

The plaintiff in error relies upon the following exceptions. They will be considered as we proceed:

1. The court instructed the jury "that the controversy turned upon what the fact was, on the 22d October, 1835, as to this water front. Had lot 34 a water front *at that time* north of the north pier?"

The instruction was according to the ruling of this court, when the case was formerly here. 18 How., 157.

The counsel for the plaintiff in error insists that the deed from Robert A. Kinzie to Johnston related back to the date of the title bond from Kinzie to Hubbard, and that this was a new element in the case, which required a change of the rule, as to the point of time to which the attention of the jury should have been directed. We do not think so. The doctrine of relation cannot be made to work such a result. It is a legal fiction, invented to promote the ends of justice. It is a general rule, that it shall do no wrong to strangers. It is applied with vigor between the original parties, when justice so requires; but it is never allowed to defeat the collateral rights of third persons, lawfully acquired. 4 J. R., 234, *Jackson* vs. *Bard*; 3 Caine's Rep., 262, *Case* vs. *DeGoes*; 18 Vin. Abr., 287, Relation B.; 13 Coke, 21 Menville's Case; 7 Ohio S. R., 291, *Wood* vs. *Furguson*.

The plaintiff could recover only upon a legal title. That title was vested in him, if at all, by the deed from Robert A. Kinzie of the 22d of October, 1835. The equities subsisting

at any time between those parties could not in any wise affect the result of the action.

We are satisfied with this instruction. Under it the jury found a verdict for the defendants.

2. It is objected that the court did not instruct the jury correctly as to the value, as evidence, of the surveys, maps, and plats exhibited by the plaintiff upon the trial; but that, on the contrary, it was stated that they were not independent evidence, and that the jury were to receive them only in so far as they were shown to be correct by the other testimony in the case.

The facts touching these maps and plats are not stated in the bill of exceptions. We have been compelled to look over much of the testimony in our search for them. Without intending to lay down any general rule upon the subject, or to question the soundness of the authorities relied upon by the counsel for the plaintiff in error, we content ourselves with saying, that we are not satisfied that the court below committed any error in what was said in this connection.

3. It is insisted, that the court erred in laying down the rule for the partition of the alluvium. It would be sufficient to say, that the jury having found that lot 34, at the time referred to, had no water front north of the north pier, the question did not arise. The instructions given and those refused were, in this view of the subject, abstract and speculative propositions. Those given, whether right or wrong, could not have injuriously affected the plaintiff. A party cannot be allowed to complain of an error which has done him no harm. 9 Gill, 61, *Ramsey et al.* vs. *Jenkins.*

But as the views of the court have been misapprehended, and that misapprehension may mislead in other cases, we prefer to deal with the subject as if it were properly before us. The court below instructed the jury in the language used by this court when the case was here in 1855. Upon that occasion, it was intended to adopt the rule laid down by the Supreme Court of Massachusetts in 17 Pickering, 45, 46, *Deerfield* vs. *Arms.* That court said: "The rule is—1, to measure the

whole extent of the ancient bank or line of the river, and compute how many rods, yards, or feet each riparian proprietor owned on the river line; 2, the next step is, supposing the former line, for instance, to amount to 200 rods, to divide the newly formed bank or river line into 200 equal parts, and appropriate to each proprietor as many portions of this *new* river line as he owned rods on the *old*. When to complete the division, lines are to be drawn from the points at which the proprietors respectively bounded on the *old*, to the points thus determined, as the points of division on the newly formed shore. The new lines thus formed, it is obvious, will be either parallel, or divergent, or convergent, according as the *new* shore line of the river equals, or exceeds, or falls short of the old." It is further said : " It may require modification, perhaps, under particular circumstances. For instance, in applying the rule to the ancient margin of the river, to ascertain the extent of each proprietor's title on that margin, the *general* line ought to be taken, and not the actual length of the line on that margin, if it happens to be elongated by deep indentations or sharp projections. In such case, it should be reduced by an equitable and judicious estimate to the general available line of the land upon the river."

To this rule we adhere. With the qualification stated, it may be considered as embodying the views of this court upon the subject. In this case, if lot 34 had been found to have had a water front north of the north pier at the time stated, the pier front would have had nothing to do with the partition to be made. The lake front, where the accretion occurred, only could have been regarded. The whole of *that front* should have been taken as the basis of the adjustment.

4. The court refused to instruct the jury as prayed upon the subject of the possession of the alluvium in controversy by the plaintiff in error. It is sufficient to say, that both the prayers upon that subject assume as an element, that lot 34 had, to some extent, a front on the lake north of the north pier. The verdict of the jury, for the purposes of this case, is conclusive upon that subject. It is frankly admitted by the counsel for

the plaintiff in error, that if the lot had no such front, his propositions had no application to the case.

5. The court rejected the deed of John H. Kinzie to the plaintiff, when offered in evidence.

Robert A. Kinzie was the patentee of the land upon which his addition to the town of Chicago was laid out. He conveyed lot 34 to John H. Kinzie by a deed which, in describing the lot, referred to the *original plat* of the addition. John H. Kinzie conveyed the lot back to Robert by a deed describing it, with a reference to the plat *as recorded*. The original plat showed a water front to this lot. On the plat as recorded, this fact was wanting. The deed from John H. Kinzie to Johnston was executed for the consideration of twenty-five dollars, to correct the alleged error in the deed from John H. to Robert A. Kinzie, in pursuance of a covenant for further assurance in the deed of Robert A. Kinzie to Johnston, and thus to give the plaintiff a title to the alluvium claimed to belong to that lot, if he had not such title already.

If there were any mistake in the original deeds, of which Johnston had a right to avail himself, the remedy should have been sought by a proceeding in chancery had for that purpose, with all the proper parties before the court. The agreement of the parties themselves that there was such error, and a deed made in pursuance of that agreement, cannot affect the rights of third persons. A further and fatal objection to the admission of the deed in evidence is the time at which it was executed. It bears date more than seven years after the filing of the declaration in this case. In ejectment, the plaintiff must recover, if at all, upon the state of his title as it subsisted at the commencement of the suit. Evidence of any after acquired title is wholly inadmissible. 4 Term R., 680, *Goodtitle* vs. *Herbert*; 11 Illinois, 547, *Wood* vs. *Martin*; 13 Illinois, 251, *Pilkin* vs. *Yaw*; 8 Pet., 218, *Binney* vs. *The Canal Co.*

6. "The ruling of the court, in excluding the testimony of Samuel S. Greeley, as stated on pages 133 and 134 of the printed report."

This, we suppose, refers to the following passage in the

testimony of this witness, as it appears in the printed record:

"2. (Presenting Allen's map of 1838.) Look at the accretion at the north side of the north pier, and tell me whether the ratio of increase between what is represented there in '34 and '37, and what was made from '37 to '38, call for any accretions made in '34 and '35; and if so, to what extent and in what year?"

The facts disclosed in the testimony show that Allen's map was not itself original and reliable evidence. A calculation founded upon it was therefore clearly inadmissible. The admissibility of this evidence, as regards other objections, would depend upon a proper foundation being laid for it. As it is not necessary, we have not gone into any inquiry upon that subject.

7th. "The ruling of the court, in excluding the testimony of Capt. J. D. Webster, as shown on page 191 of the printed report."

It appears, in the testimony of this witness, that he went to Chicago, in 1841 or 1842, as an officer of the United States. The following also appears:

"Question. Did you hold the position of superintendent of harbors here—the same that Captain Allen did once?

"Answer. Yes, sir, I did, for a while.

"Question. State whether it was any part of your duty, as superintendent of the harbor, to report to the Government the changes that were occurring in and about the harbor?"

The latter question was objected to, and the objection sustained.

The testimony which the question objected to sought to elicit would, in itself, have been immaterial and irrelevant. If intended, as part of the evidence proposed to be drawn out, to prove the duties of Lieut. Allen at a former period, as the language of the court, in deciding the point, seems to imply, it was inadmissible also upon that ground. The official duties of Lieut. Allen could not be proved in that way.

8th. "The rulings of the court, in excluding evidence tending to affect the credibility of one of defendant's witnesses,

*Johnston* vs. *Jones et al.*

viz., Benjamin Jones, as stated on pages 360 and 362 of the printed record."

The witness Jones was the brother of the defendant Jones, and had been examined in chief for him. In his cross-examination, he stated that his brother formerly owned lot 35, adjoining lot 34; that it had been sold at sheriff's sale; bought in by Dennison; by Dennison conveyed to him, and afterwards by him back to his brother.

He was asked: "Did you pay Dennison anything?"

This question was objected to by the defendants, and overruled by the court.

We estimate at its highest value "the power of cross-examination." The extent to which it may be carried, touching the merits of the case, was defined by this court in 14 Peters, 445; *The Philadelphia and T. R. R. Co.* vs. *Simpson.* The rule there laid down, this court has since adhered to. A cross-examination for other purposes must necessarily be guided and limited by the discretion of the court trying the cause. The exercise of this discretion by a Circuit Court cannot be made the subject of review by this court. We have looked through the long and searching cross-examination to which this witness was subjected. There would have been no error if the objection had been overruled. There was none in sustaining it.

9. "The ruling of the court, in excluding the evidence of Theophilus Greenwood, offered by the plaintiff, as rebutting evidence to the evidence of possession of the alleged accretion by defendants, at the date of the deed to the plaintiff, as stated on page 424 of the printed report."

Upon looking through the testimony of the witness, we find he was allowed to testify fully upon the subject of possession. The court expressly held, that he should be permitted to do so. The plaintiff in error then proposed to prove by him where, at a certain time, "the actual water line east of or upon water lot 34 was, in reference to the east line of said lot 34;" * * "which the court refused, on the ground that it should have been introduced as evidence in chief, not as rebutting." That this evidence was of the former and not of the latter character, seems to us too clear to admit of discussion.

"The mode of conducting trials, the order of introducing evidence, and the times when it shall be introduced, are matters properly belonging to the practice of the Circuit Courts, with which this court ought not to interfere." 14 Peters, 448, *P. and T. R. R. Co.* vs. *Simpson.*

These are substantially all the points pressed upon our attention by the counsel for the plaintiff in error, in his able and elaborate argument. They are all to which we deem it necessary to advert.

We find no error in the record. The judgment below must be affirmed, with costs.

*Decree of the Circuit Court affirmed.*