FEBRUARY TERM, 1868. 403

Sawyer vs. The Chicago and Northwestern Railway Company.

# FEBRUARY TERM, 1868.

## Sawyer vs. The Chicago and Northwestern Railway Company.

COMMON CARRIER: *Delivery of bill of lading to third party by carrier, on statement by shipper's teamster that the property was for such party.* CONTRACT—*when severable.*

1. A teamster employed by a mill-owner to deliver flour to a railroad company for transportation, has no power, by virtue of such employment, to authorize the delivery of the flour by the company to a third party.
2. A statement by such teamster (who was known by the company to be in the owner's employ) that the flour was *for* such third party, did not imply that it was to be delivered by the company to him without further instructions from the owner.
3. A contract to deliver 300 bbls. of flour in lots of 100 each, payment to be made for each lot on delivery thereof, is *severable;* and acceptance of payment for the last two lots on delivery was not a waiver of any rights of the seller arising out of the unauthorized delivery of the first lot by the railroad company without payment made.

APPEAL from the County Court of *Milwaukee* County.

Action for damages for the conversion by defendant of one hundred barrels of flour, alleged to have been delivered to it for shipment, subject to plaintiff's order, and to have been by it, wrongfully and without authority, delivered to one Tilton, who had caused it to be transported out of the state, and converted it to his own use. Demand made of

defendant for the flour or payment therefor, and refusal, are alleged. Answer, in denial.

Plaintiff, a mill-owner in Milwaukee, sold Tilton (by oral contract) 300 barrels of flour at eight dollars per barrel, to be paid for on delivery of each hundred barrels; delivery to be made at defendant's depot in Milwaukee. Plaintiff sent 100 barrels to the depot, being a part of the flour he designed delivering to Tilton, and defendant's shipping clerk learned from the teamster who hauled the first load, that it was "for Tilton;" but he knew that it came from plaintiff's mill. During the same day, and before the whole of the 100 barrels were delivered at the depot, Tilton obtained from defendant a bill of lading thereof; and it was shipped to Chicago by his direction, and on his account. Afterwards defendant gave plaintiff a receipt for the flour, stating that it was received "for shipment." Plaintiff subsequently, by the direction of Tilton, delivered the other two hundred barrels : one hundred to Jones & Co., for which Tilton (on delivery to him by plaintiff of the railroad receipt) paid him $825; and one hundred to Davis & Co., for which they paid him $825 ; and the $50 in excess of the price at which the sale was made to Tilton, was, by his direction and plaintiff's consent, to be applied on his indebtedness to plaintiff; but whether upon his account generally (plaintiff having a previous claim against him), or specially as a payment on the flour in suit, there was conflicting evidence.

The questions presented by the evidence will sufficiently appear from the following instructions given to the jury: "1. If it was the understanding between plaintiff and Tilton, that plaintiff should deliver the flour at defendant's depot, and take the receipt in his own name, and deliver it to the purchaser only on payment by him of the price, then the delivery of the flour to defendant did not pass the title

to Tilton; and if defendant delivered it to Tilton without authority from plaintiff, that was a conversion. 2. If plaintiff and Tilton had had previous dealings in flour, to be delivered at defendant's depot, and in all such dealings plaintiff had delivered the flour to defendant, taking the receipt therefor in his own name, and only delivering it to Tilton on payment of the price, the presumption would be that they intended this sale to be conducted and completed in the same manner, unless they provided differently in the contract. 3. If it was the general custom among business men in Milwaukee, on cash sales of property to be delivered at a railroad station, for the vendor to deliver the property at such station, taking the receipt of the railroad company therefor in his own name, and transferring such receipt to the purchaser on payment of the price, then unless the parties to this sale agreed differently, or there was an established course of dealing between them different from such general usage, the presumption would be that they intended this sale to be conducted and completed in accordance with such general usage; and in that event the delivery of the flour by plaintiff to defendant did not pass the title to Tilton, and if defendant delivered it to him without plaintiff's authority, that was a conversion. 4. If plaintiff had been in the habit of delivering large quantities of flour to defendant, and taking receipts in his own name for each hundred barrels, and if he delivered the flour in question to defendant, intending to take the receipt in his own name as soon as the delivery of the hundred barrels was completed, such delivery did not divest his title, nor authorize defendant to deliver it to any other person without his order, although he might previously have made a verbal agreement to sell the flour to Tilton, and intended after taking such receipt to transfer it to Tilton on the payment of the price. 5. The agreement to sell this flour to Tilton, if merely verbal,

Vol. XXII.—27.

was void under the statute of frauds; and before the jury can find that plaintiff's title to the flour in question was divested, they must be satisfied that he delivered it to the defendant, with the intent thereby to transfer the title to Tilton. 6. If the plaintiff had given defendant general directions to ship all his flour to certain parties at the East, unless otherwise ordered, and if a course of dealing had been established between them, by which plaintiff always took receipts for each hundred barrels on completing the delivery thereof, in his own name, and if the teamster who delivered the first load of the flour in question, had no authority to give any directions in regard to the disposition of said flour, and plaintiff had never employed any such teamster for any other purpose than to drive the teams to the depot with the flour and bring back the receipt; then, if defendant knew that this flour came from plaintiff's mill and was brought by his teamster, the statement by the teamster who brought the first load that it was for Tilton, and that a hundred barrels would be delivered for him, did not justify defendant in delivering said flour to Tilton without some further authority or directions from the plaintiff; and if defendant did so deliver it, it is liable for a conversion. 7. If the flour in question belonged to the plaintiff, and defendant, by his agents, knew that it came from plaintiff's mill, and brought by his teamster, then before you can find that defendant was justified in delivering the flour to Tilton on the statement of the teamster who brought the first load that it was for Tilton, you must find that the teamster had actual authority to give directions for the plaintiff in regard to the disposition of the flour, or that plaintiff, by his previous conduct, had given defendant reasonable ground to believe that he had such authority. 8. If the flour was plaintiff's, and was wrongfully delivered by defendant to Tilton, and thereby converted, although plaintiff afterwards

received $50 from Tilton on account thereof, that would constitute no waiver of plaintiff's right of action against defendant." The court further instructed the jury that if they found for the plaintiff, but found that the $50 was paid on account of the flour here in question, they should deduct it in estimating the damages.

The evidence on which the second, third and fourth instructions were based, relative to the course of dealing between plaintiff and defendant and between him and Tilton, and the general custom in Milwaukee in such transactions, was introduced by plaintiff against defendant's objections.

Instructions asked by the defendant were refused, one of which was as follows: "If the contract (of sale) was for three hundred barrels, to be paid for on delivery of each one hundred, and after Tilton had obtained possession of one hundred barrels without payment, plaintiff, knowing that fact, delivered and received pay for the other two hundred, he could not treat Tilton's possession of the one hundred barrels as tortious."

Verdict for plaintiff for the full value of the flour, with interest. A motion for a new trial (for error in the rulings and instructions of the court, and because the verdict was contrary to the evidence) was denied; and from a judgment on the verdict defendant appealed.

*Brown & Pratt*, for appellant, argued, among other things, that the plaintiff could not maintain his action as *owner* of the flour, because the title had passed to Tilton at the time of the alleged conversion. Had the flour been stolen or burned without fault on either side, the loss, as between plaintiff and Tilton, would have fallen upon the latter. Plaintiff had merely a lien for the price, and defendant would be liable to him only in a special action for the amount of the lien. The distinction is important, because

the measure of damages is different in the two actions. 2
Kent's Comm., *492; Story on Sales, §§ 319, 320, 416; *Martindale v. Smith*, 1 Ad. & Ellis, N. S., 389; *Hinde v. Whitehouse*,
7 East, 571; *Hanson v. Meyer*, 6 East, 614; *Bloxam v. Sanders*,
4 Barn. & Cress., 948. 2. The contract of sale to Tilton of
300 barrels was entire, and the subsequent delivery of the
last 200 barrels on that contract, with a knowledge of all the
facts, was an acknowledgment that the other 100 barrels had
been rightly applied on that contract. Story on Contracts,
§ 241; *Baldey v. Parker*, 2 Barn. & Cress., 41; *Scott v. Eastern
Counties Railway Co.*, 12 Mees. & Wels., 71; *Clark v. Baker*,
5 Met., 452; *Rugg v. Minett*, 11 East, 211. 3. The weight
of evidence is that $50 was paid by Tilton as a part of
the price of the flour in suit. Plaintiff, having treated the
contract as a subsisting one, and received under it not only
full payment for two hundred barrels, but part payment for
the one hundred, cannot now avoid the contract, and treat
the delivery to Tilton as tortious. Counsel also argued various questions as to the admission of evidence.

*Byron Paine*, for respondent, in support of the first five
instructions given, cited *Schuster v. McKellar*, 90 E. C. L.,
704; and in support of the sixth and seventh, *Reitz v. Martin*, 12 Ind., 306; *Puttock v. Warr*, 3 Hurl. & Nor., 979;
*Dows v. Perrin*, 16 N. Y., 325; *Doan v. Dudcan*, 18 Ill., 96;
*Ames v. Drew*, 11 Foster, 475; *Pursley v. Morrison*, 7 Ind.,
356; *Nixon v. Palmer*, 4 Seld., 398; *Hampton v. Matthews*,
14 Pa. St., 105; *Paige v. Stone*, 10 Met., 160; *Fitzgerald v.
Dressler*, 5 C. B. (N. S.), 885; *White v. Langdon*, 30 Vt.,
599; *Powell v. Henry*, 27 Ala., 612; *Towle v. Leavitt*, 3 Fost.,
360; *Brown v. Johnson*, 12 S. & M., 398; *Maunder v. Conyers*,
2 Starkie, 281. If the instructions were correct, the jury
could not have found any other verdict upon the undisputed
facts, and the judgment will not be reversed for errors which
became immaterial.

DIXON, C. J.   Mr. Watson, the receiving and shipping clerk of the defendant, the railway company, knew that the flour belonged to the plaintiff.  He knew it because he knew it came from the plaintiff's mill, and that the teamster who hauled it was the same who had previously hauled flour for the plaintiff.  He himself testified to these facts. He also testified that his only authority for delivering the bill of lading to Mr. Tilton was, that the teamster " said that the flour was for Mr. Tilton."   This was clearly no authority for delivering the flour to Mr. Tilton; and such delivery was a conversion by the railway company.

In the first place, the teamster was not the agent of the plaintiff for any such purpose.   He was a mere servant, having possession of the flour for the purpose of delivering it to the railway company, and nothing more.   He had no power or semblance of power, by virtue of his employment, to direct the delivery of the flour by the railway company to Mr. Tilton or any one else.   The agents and servants of the railway company were bound to know this, and to govern themselves accordingly.   See authorities cited by counsel for plaintiff to this point.   Special authority from the plaintiff to the teamster for that purpose was not shown, nor attempted to be.

In the second place, the statement of the teamster that the flour was *for* Mr. Tilton did not justify the inference, either that it then belonged to Mr. Tilton or that he was entitled to the possession of it.   It was no more than saying that it was *intended for* him, which was true, but which could not have been understood as implying that it was to be delivered by the railroad company to him without further and specific instructions to that effect from the plaintiff, who was the real owner.

Upon these facts alone, which are clear and undisputed, I do not see how the jury could have found otherwise than

that the delivery to Mr. Tilton was wholly unauthorized; and that without regard to any evidence of the supposed custom prevailing among business men in transactions of this nature.   If there was no custom, and no evidence tending to establish it, the verdict must have been the very same.   I do not therefore consider it necessary to examine any of the exceptions or alleged errors arising out of that part of the case.   They become immaterial, and cannot affect the judgment.

The next question, and that about which we have had most difficulty, arises out of the subsequent delivery by the plaintiff to Mr. Tilton of the other two hundred barrels of flour mentioned in the agreement.   He delivered and received pay for them.   Was such delivery and receipt of payment a waiver of the condition of payment down for the first hundred barrels according to the agreement?   Did the plaintiff thereby ratify the entire agreement, so that he could not afterwards rescind as to the one hundred barrels of which Mr. Tilton had thus obtained wrongful possession?  Laying aside all questions under the statute of frauds, and considering the agreement in every respect as valid as if it had been reduced to writing and subscribed by the parties, I yet think that the plaintiff waived none of his legal rights arising out of the wrongful delivery or taking of the first one hundred barrels.   I think so because I think the agreement was divisible.   It was for the sale of three hundred barrels of flour at $8 per barrel, to be delivered in lots of one hundred barrels each, each lot to be paid for on delivery.   It was in legal effect the same as if there had been three contracts for the sale and delivery of one hundred barrels of flour each.   The delivery of the flour and receipt of the price under one contract was not a waiver of any rights which had accrued in consequence of the non-performance of another.   "Any contract," says Mr. PARSONS,

"may consist of many parts; and these may be considered as parts of one whole, or as so many distinct contracts, entered into at one time, and expressed in the same instrument, but not thereby made one contract.    *    *    *    If the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such contract will generally be held to be severable." See 2 Parsons on Contracts (5th ed.), p. 517, and cases cited in note (b), especially *Johnson v. Johnson*, 3 B. & P., 162, and *Robinson v. Green*, 3 Met., 159. See also *Goodwin v. Merrill*, 13 Wis., 659.

The only remaining question necessary to be considered is as to the eighth instruction given by the court to the jury. That instruction was to the effect that the subsequent receipt by the plaintiff from Mr. Tilton of $50 on account of the flour wrongfully delivered, if the jury should so find, would constitute no release or waiver of the plaintiff's right of action against the defendant. The correctness of this instruction is very questionable; but whether it is correct or not is not a matter which need now be considered. It has become speculative and immaterial by the finding of the jury. The jury returned a verdict for the plaintiff for the value or price of the flour, with interest from the time of conversion, and thus must have found that the $50 was received by the plaintiff not in part payment for this flour, but upon a pre-existing debt due from Tilton to him. The verdict in this respect is sustained by evidence, and was found under a proper instruction given by the court upon that point. Hence the defendant is not aggrieved by the instruction, conceding it to have been erroneous, and the judgment will not on that account be reversed. *Lawler v. Earle*, 5 Allen, 22; *Powers v. Sawyer*,

---

46 Me., 160; *Johnston v. Jones*, 1 Black, 209, 222; *Ramsey and Jenkins v. Gloss*, 9 Gill, 56.

*By the Court.*—Judgment affirmed.