## WILLIAM A. WATERS ET AL. *vs.* WASHINGTON WATERS AND ELLEN M. WATERS.

ISSUES FROM ORPHANS' COURT,—TRIAL OF.—The provisions of the Code authorizing the transmission of issues to Courts of Law for trial, were not intended to restrict or qualify the general powers of those Courts, but to secure a trial of such issues subject to the exercise of those powers, and it is therefore the duty of the Court of Law in trying such issues to exercise its powers, both legal and discretionary, according to the exigencies of the case.

——: RULINGS OF COURT UPON MATTERS RESTING IN ITS DISCRETION NOT THE SUBJECT OF EXCEPTION OR APPEAL.—Although Art. 5, sec. 5 of the Code provides, that "exceptions may be taken to any opinion given by the Court before whom issues from the Orphans' Court may be tried and an appeal taken," this clause cannot be so construed as to qualify or restrict any power of such Court, a result that would necessarily follow, if rulings upon matters resting in discretion could be reached by exceptions and made the subject of review or appeal.

This provision was simply intended to confer a right of exception and appeal corresponding in its essential particulars with the right as it exists in actions at law; and thus construed, the question as to an appellant's right of review, necessarily depends upon the principles and rules applicable to a like state of case in an action at law.

——: ——: A MOTION FOR A NEW TRIAL in such a case addresses itself to the sound discretion of the Court, and according to the general current of authority, the granting or refusal to grant it is a matter resting altogether in the Court's discretionary power. This power is an equitable one in its nature, and its exercise is always presumed to be in accordance with the requirements of justice.

Where a verdict is found upon evidence not legally admissible, or upon a misdirection of the Court, and it can be seen upon a consideration of the whole case that the verdict is inequitable, the Court may, upon motion, set the verdict aside and grant a new trial; but if the verdict is substantially right and accords with the real merits of the case, the Court may, without regard to antecedent mistakes in law or fact, refuse a new trial and let the verdict stand.

MOTION FOR NEW TRIAL DISTINGUISHED FROM MOTION IN ARREST, OR FOR VENIRE FACIAS DE NOVO.—The power to set aside a verdict or motion rests upon considerations altogether behind mere legal objections to the verdict; and it is upon this ground that the motion goes to the discretion of the Court, and that the action upon it cannot be assigned for error upon appeal or writ of error; it is upon this ground, also, that the motion for a new trial is distinguished from a motion in arrest, or for a *venire facias de novo.* The latter motions go to legal defects in the verdict or the record, and they call for determination according to the rules and principles applicable to them.

APPEAL from the Circuit Court for Anne Arundel county.

This is a motion to dismiss an appeal which was taken from an order of the Circuit Court for Anne Arundel

county, granting a motion by the caveatees for a new trial in a case of issues from the Orphans' Court of Montgomery county, and overruling a motion of the caveators, that the caveatees be required to elect between their said motion and their exceptions reserved at the trial. The facts of the case, upon which these motions are made, are these:

The will of Tilghman Waters was admitted to probate in Montgomery county, and subsequently a caveat was filed thereto by the appellants, and seven issues were, after answer filed by the appellees, sent by the Orphans' Court to the Circuit Court of Montgomery county for trial, as follows:

1st. Whether the said paper. writing filed by said Dr. Washington Waters, was executed by said Tilghman Waters when he was of sound and disposing mind, and capable of executing a valid deed or contract.

2nd. Whether the said paper writing was executed and attested, as required by law, to pass the title to real estate.

3rd. Whether the said paper writing was executed by said Tilghman Waters under the influence of suggestions and importunities, when his mind, from its diseased or enfeebled state, was unable to resist the same.

4th. Was the said paper writing, and the execution thereof, the free and voluntary act of said Tilghman Waters, to which he was induced, with a knowledge of its contents and without the exercise of a dominion or influence by some person or persons which prevented, in his then condition, the exercise of a sound discretion.

5th. Was the execution of said paper writing procured by undue influence, fraudulent devices, importunities, misrepresentations and deceits practiced on the said Tilghman Waters.

6th. Was the execution of said paper writing procured by the exercise of an undue influence, dominion or control over. the said Tilghman Waters obtained over him by his

Waters et al. *vs.* Waters et al.

wife, Eleanor M. Waters, and which in his then condition he was unable to resist.

7th. Was the said Tilghman Waters, at any time subsequent to the execution of said paper writing, desirous of altering or cancelling the same, and was he prevented from so doing by management, fraud, undue influences or importunities.

The trial of these issues was, on suggestion, moved first to Howard and then to Anne Arundel county, where the trial was had.

In the course of the trial, three exceptions were taken by the appellees. The first, to the ruling of the Court deciding that the caveators had the right to open and conclude the argument before the jury. The second, to the ruling of the Court overruling the appellee's objection to the competency of Zadok M. Waters, one of the caveators, and one of the heirs-at-law of said Tilghman Waters, to testify as a witness for the caveators. The third, to the ruling of the Court overruling the appellee's objection to allowing the witness, Hammond Sollers, to state his opinion of the mental capacity of Tilghman Waters to make a valid deed or contract, upon the ground that sufficient facts had not been stated by the witness to lay the foundation for the expression of such opinion to the jury.

The jury rendered a verdict for the caveators on the first issue, and for the caveatees on all the other issues. The caveatees then moved for a new trial, upon the grounds that the verdict was against the weight of the evidence, and that the finding and verdict of the jury on the first and fourth issues are inconsistent and contradictory. The caveators then moved the Court to require the caveatees to to elect between the exceptions taken by them to the rulings of the Court on the trial, and their motion for a new trial, and insisted that the Court should not entertain the motion for a new trial until such election was made.

The Court, ( Tuck, J.,) overruled the caveators' motion to put the caveatees to an election, and granted the caveatees' motion for a new trial, and filed the following opinion on each of these motions.

"In the matter of issues on the caveat to the will of Tilghman Waters.

"Motion for a new trial on the part of the caveatees; and motion on the part of the caveators, that the caveatees be required to elect between their said motion and their exceptions reserved at the trial.

"In the case of *Lee et al. vs. Tinges*, 7 *Md. Rep.*, 215, it was said, that where the questions presented by the exceptions are the same with those on which the new trial is asked, the party should be put to his election; but that is not the case here; the questions are altogether different, and the reasons by which that decision may be supported have no application to the present case. In *Mitchell vs. Mitchell*, 11 *G. & J.*, 388, the County Court refused to hear the motion for a new trial, because the party would not abandon his exceptions; but in the case of *Townshend's Will*, 9 *Gill*, 506, the Court heard and overruled the motion for a new trial, without requiring the party to elect between his motion and the exceptions.

"The case went to the Court of Appeals, and no notice was taken of the question, although presented in argument. Now, it seems to me, as that objection to the appeal being heard was fatal to the appellants, if well taken, the Court would not have passed the point in silence and reversed the judgment on the exceptions, if in their opinion the appellants had forfeited their right to be heard on the exceptions; they must have thought that the motion for a new trial might in that case have been made and entertained without abandoning the appeal. If the law in Maryland had been considered as settled, that in all cases, a motion for a new trial would not be heard unless the party making

Waters et al. *vs.* Waters et al.

that motion abandoned his exceptions, or that the motion operated as a waiver of the exceptions. I cannot doubt that the Court of Appeals, in *Lee et al. vs. Tinges,* would have said so. The case there put, where the motion would have such effect on the exception, seems to exclude the conclusion that it would so operate in one like the present, where the points raised by the exceptions and motion are not the same. See, also, 6 *Howard,* 283. The motion on the part of the caveators, that the other side be put to their election, is overruled.

"I have given to the motion for a new trial the greatest consideration of which I am capable, with every disposition to regard the principle that verdicts should not be disturbed, except upon the most cogent reasons. In a case like the present, where the number of witnesses is so great, their attendance here so inconvenient, and the cost and other expenses so heavy, it is much to be regretted that the verdict is not such as the parties may be made to abide by. But these circumstances do not affect the principle on which the law of new trials is founded. Whenever the occasion arises, it is as much the duty of Courts to allow new trials, in the exercise of a sound judicial discretion looking to the purpose of justice, as to obey the law in having a first trial. This doctrine is well settled, though I am at all times unwilling to act upon it, because of the effect that frequent new trials are calculated to have upon the administration of justice, which ought to challenge public confidence.

"In the present case, however, I am relieved from the necessity of passing upon the correctness of the verdict in connection with the testimony laid before the jury. It will be tried again as free from all influence of any opinion I may have found of the merits of the case, as if it never had been tried before me.

"One reason assigned in support of the motion is based on the insufficiency of the verdict. There being alleged

repugnancy between the finding on the first issue and that on the fourth ; and that objection I think is well taken.

"It is not my province to enter judgment on this verdict ; that duty the law devolves on the Orphans' Court of Montgomery county.

"These issues were designed to advertise that tribunal of the truth of the matter  put in controversy by the plenary proceedings, so that it might act understandingly in admitting or rejecting the paper propounded as the will of the deceased.  The trial here is merely auxiliary to the final proceedings in the Orphans' Court, to enable those judges to pronounce the proper judgment, and to that end, the verdict must not be insufficient in law, indefinite, vague or uncertain ; if defective in any of these respects, no judgment can be rendered thereon by the Orphans' Court, and a new trial is necessary. *Pegg vs. Warford*, 4 *Md. Rep.*, 385.  *Warford vs. Colvin*, 14 *Md. Rep.*, 532.  See, also, *Browne vs. Browne*, 22 *Md. Rep.*, 103.  1864, *Code, Art.* 93, *sec.* 250.

"The verdict on the first issue declares, that the deceased at the time of making the will, was not of sound and disposing mind, and capable of executing a valid deed or contract, which means (as explained by the Court of Appeals, in *Davis vs. Calvert* and *Colvin vs. Warford*, 20 *Md. Rep.*, 357,) that he had not 'sufficient capacity at that time to make a disposition of his estate with judgment and understanding in reference to the amount and situation of his property, and the relative claims of the different persons who should have been the objects of his bounty.'  In answering to the fourth issue, the jury have said that 'the said paper and the execution thereof, were his free. and voluntary act, to which he was induced with a knowledge of its contents, and without the exercise of a dominion or influence by some person or persons which prevented, in his then condition, the exercise of a sound discretion.'  It

Waters et al. *vs.* Waters et al.

seems to me that if it can be affirmed of a man, that he made and executed a will freely and voluntarily, with a knowledge of its contents, and without any influence or dominion by other persons, preventing the exercise of a sound discretion, it is next to impossible to say, of the same man, that at that time, and in making and executing such paper, he had not sufficient capacity to make a disposition of his property with judgment and understanding in reference to its amount and situation, and the claims of others upon his bounty.

"It was said in argument, that this fourth issue was designed to present the question of undue influence, but I think it goes further, and embraces also the question of mental capacity. It is not unlike the general issue of *devisavit vel non*, in trying which any ground may be taken, that if found by the jury, would defeat the will. Suppose, instead of this fourth issue, there had been one of *devisavit vel non*, and the jury had found on that for the caveatees, can there be a doubt that the findings on the first and fourth could not stand together? To the first issue the answer would have been, that the deceased was of unsound mind and incapable of making a valid deed or contract; while by the finding on the other, the jury would have declared that he had not died intestate. Besides, there are other issues which present the questions of undue influence, importunity, fraud, &c., independent of any inquiry on the subject of mental capacity; from which it may be inferred that the Orphans' Court, in transmitting the fourth in its present form, supposed that it embraced mental capacity as well.

"It is the duty of the Orphans' Court to 'give judgment' upon the finding of the jury. *Code, Art.* 93, *sec.* 250. That Court must determine for itself what the finding is, whether for or against the will. This paper has already been admitted to probate, and must stand as proved until

by a verdict of the jury and judgment of the Orphans' Court, that probate is vacated. This trial, as before observed, is intended to aid the Court in making a correct decision ; the law entitles the judges to a verdict on the issues sufficient in law, definite, not vague or uncertain, and this is required for the interest of both sides.

"In *Hawkes vs. Crofton, 2 Burr.*, 699, ( recognized in the case of *Browne vs. Browne,*) it is laid down, 'where the intention of the jury is manifest and beyond doubt, the Court will set right matters of form.' 'The Court will collect the meaning of the jury if they give such a verdict that the Court can understand them.' 'If a verdict can be concluded out of the finding, to the point in issue, the Court shall work and mould it into form according to the justice of the case.' Now although the judge who presides at a trial, observing all that passes, may be able with reasonable certainty to conclude what the jury intended by their verdict, and give it effect according to the justice of the case, the judges of the Orphans' Court could not do so, because they can know nothing of the facts on which the jury may have passed, and must be confined to the verdict as certified to them. Hence, they are not to be embarrassed by a defective verdict. The intention of the jury, as shewn by the verdict, must be 'manifest and beyond doubt,' so as to prevent injustice to either party in rendering the final judgment. In this very case, if these issues and findings were sent back to the Orphans' Court, that tribunal might experience the very difficulty which certainly, in verdicts, it is intended to prevent, and the probate would stand, although the jury might have intended to upset the will altogether, for the probate being *prima facie* correct would not be vacated unless it clearly appeared that the jury meant that their verdict should have that effect. Upon full consideration of the case, I have not been able to arrive at any other conclusion than that this verdict is so uncer-

tain that no judgment can be rendered thereon by the Orphans' Court, and that a new trial must be granted. As to the costs of the first trial, my present impression is, that the law which submits the question of costs to the Orphans' Court, does not apply to the costs of the first trial, where there has been a verdict and a new trial order- ed. This point, however, is reserved for future order.''

This appeal was taken by the caveators from the decisions of the Court below on these two motions.

In this Court the appellees moved the Court to dismiss the appeal, and the motion was argued before BOWIE, C. J., BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*Thomas S. Alexander* and *James S. Franklin* for the motion.

1st. It is a well established principle of Maryland law and Maryland practice, that the granting or refusal to grant new trials is a matter resting in the discretion of the Court, and that neither the granting or refusal of a motion for a new trial is ground for a writ of error or appeal. *Evans' Practice*, 326, 329. *Anderson vs. The State*, 5 *H. & J.*, 174. *Wall vs. Wall*, 2 *H. & G.*, 79. *Boteler & Belt vs. The State*, 7 *G. & J.*, 109. *Barr vs. Gratz*, 4 *Wheat.*, 213. *Keirle & Walker vs. Shriver*, 11 *G. & J.*, 405. *Randall vs. Glenn*, 2 *Gill*, 430. *Compton vs. Compton*, 2 *Gill*, 241. *Johnson vs. Brannaman*, 10 *Md. Rep.*, 495. *Robinson's Case*, 12 *Md. Rep.*, 132. *Hughes vs. Jackson*, 12 *Md. Rep.*, 450. *Reynolds' Case*, 18 *Md. Rep.*, 270. *Howard vs. Waters*, 19 *Md. Rep.*, 329. *Blackburn's Case*, 19 *Md. Rep.*, 40. 1 *Grahame & Waterman on New Trials*, 261, 262. 3 *Ibid.*, 1317. *Browne vs. Browne*, 22 *Md. Rep.*, 103.

The order granting a new trial must therefore stand, even though this Court should be of opinion that erroneous

reasons have been assigned by the judge below in granting it, and it is only important to consider those reasons in view of the effect which the opinion of this Court may have upon the subsequent trial of the case, in guiding the jury as to the form of their verdict on such trial; and in that view it will be insisted:

2d. That the reasons assigned by Judge TUCK, in his opinion, are sound. The findings of the jury upon the first and fourth issues are utterly inconsistent and contradictory. The very able opinion of Judge TUCK shows this inconsistency and repugnancy with admirable clearness. *Browne vs. Browne,* 22 *Md. Rep.,* 103. *Hawkes vs. Crofton,* 2 *Burr.,* 699. *Negroes Bell et al. vs. Jones,* 10 *Md. Rep.,* 322. *Colvin vs. Warford,* 20 *Md. Rep.,* 357.

3rd. The action of the Court on the motion for an election between the exceptions taken and the motion for a new trial, was correct, because the questions presented by the exceptions and the motion for a new trial are entirely different. *Lee et al. vs. Tinges,* 7 *Md. Rep.,* 215. *Mitchell vs. Mitchell,* 11 *G. & J.,* 388. *Townshend's Case,* 9 *Gill,* 506. *United States vs. Hodges,* 6 *Howard,* 283. *West vs. Cunningham,* 9 *Porter,* (*Ala. Rep.,*) 110. They also cited 8 *Coke,* 65. *Boteler & Belt vs. State,* 8 *G. & J.,* 359 & 2 *Tidd's Pr.,* 910, 931.

The appellants' counsel say, that their fourth issue was taken bodily from the case of *Pegg vs. Warford,* 7 *Md. Rep.,* 84, and has passed the ordeal of this Court. But it will appear on examination the issue alluded to was never acted on by the Court, but was actually withdrawn.

*R. J. Brent* and *Jas. Revell* against the motion to dismiss.

The appellants submit two propositions:

1st. That the Court below having granted a new trial on the single ground that the findings of the jury on the first

and fourth issues were inconsistent, the ruling of the Court involves a question of law, and not of discretion, and hence it is examinable upon this appeal.

2nd. That the ruling of the Court declaring repugnancy of the verdict on the first and fourth issues was erroneous.

1. Where a new trial is granted in the lawful exercise of the discretion of the Court, it is conceded that such discretion is not revisable on appeal; but it is maintained, that when it is apparent from the record that the inferior Court has not exercised its discretion, but has erroneously ruled a naked question of law, its ruling is subject to appeal. Here a special verdict is found, and the lower Court ruled that this verdict, which is of record, is void as a conclusion of law.

The Court of Appeals have before it the same verdict and the same record, and is as fully competent to decide the conclusions of law arising from that verdict as the lower Court.

If the Court had granted a new trial on the ground of the weight of evidence, the Court of Appeals would not be able to pass on the weight of evidence, and hence the discretion of the lower Court could not be revised.

Thus, it is discretionary with the Court to grant an amendment, and no appeal ordinarily lies, but when the Chancellor refused to permit the defendant to amend, and all the facts relied on to establish the right to amend appeared of record, the Court of Appeals reversed the ruling of the Chancellor and allowed the amendment, notwithstanding, it was argued by Pinckney and Magruder, that his ruling was not subject to appeal. *Warfield vs. Warfield*, 5 *H. & J.*, 466–7.

In *Union Bank vs. Ridgely*, 1 *H. & G.*, 407, this Court declares, "that the discretion on the question of amendments vested in the Circuit Court by the Act of 1809, was not a capricious but a sound legal discretion." This line

of argument gains strength from the peculiar wording of sec. 5, Art. 5, p. 20 of Code, under which this appeal is taken. While the other sections of this Article confer the right of appeal from any "judgment, or determination or decision of any Court of Law," sec. 5 specifically gives the appeal from "any opinion given by the Court," &c. In no other part of the Code is this peculiar phraseology used. The appellants, following the language of the Code, excepted to the opinion of the Court, and have taken an appeal "on such exception."

A perusal of the opinion of the learned judge, who tried these issues below, will clearly show, that the only point decided by him in ordering a new trial, was that the findings on the first and fourth issues were so inconsistent and uncertain that the Orphans' Court could enter no judgment on the verdict. It may be argued that reasons may have influenced the judge other than those assigned in his opinion ; but this argument can only be based on a supposition not justified by the opinion itself, but expressly disclaimed thereby. The intendment of law is that a verdict of a jury is sustained by evidence ; and where, in this record, is there anything to overcome this intendment ? In *Hoffman vs. Smith*, 1 *Md. Rep.*, 489, the Court of Appeals say, in a case like this, where special issues had been sent to a Court of Law for trial, that "whatever doubts the Court might have as to the sufficiency of the proofs, yet the verdict of the jury should have weight enough to remove these doubts, although a verdict under such circumstances is not conclusive upon the Court, yet, in all doubtful cases, it is entitled to great consideration and should be sustained, unless against the absolute convictions of the Court to the contrary." What absolute convictions can there be here ; and shall the deliberate verdict of a jury be shorn of its legitimate effect by mere suppositions ?

At common law the trial of issues sent by other Courts

to the Law Court, was by "a feigned issue," which assumed the form of an action of *assumpsit* upon a wager touching the matter in issue. See the precedents in 2 *Ch. Pl.*, 241, *side.* Now if these issues had been presented to the Court of Law in the form of "feigned issues," touching the matters involved, and the verdict had been for the plaintiffs on the first issue, and for the defendants on the fourth issue, and a *venire facias de novo* had been granted for repugnancy in the verdict, it would present nothing but a question of law on the record, and the sole enquiry would be, whether that verdict should stand or be set aside as matter of law. Here would be no question of discretion, but of pure legal right.

In 10 *Vermont Rep.*, 523, it is well said, that "a petition for new trial is an appeal to the discretion of the Court, and, in the exercise of that discretion, they are supreme so long as they keep within the limits of their authority. If indeed they transcend those limits and attempt to exercise a discretionary power which they do not possess, their decision may be set aside for that reason." Here the motion for a new trial embraces distinct matters of discretion and distinct matters of law. If the Court had directed a new trial in a matter confided to its discretion, no appeal would lie, but when it expressly declines to act on those grounds of discretion and grants the new trial because of uncertainty in the recorded verdict, it raises a question of law, and not of discretion. Suppose, in an ordinary suit, a new *venire* is granted for an alleged insufficient verdict, or refused when the verdict is defective, it is clear that an appeal lies, as decided in *Sutton vs. State,* 4 *Gill,* 497.

An erroneous or defective verdict is a mistrial, and the question of its sufficiency is for the Appellate Court. If the Court below had overruled the motion and certified the verdict to the Orphans' Court, when it was really defective

and repugnant, no redress could be had in the Orphans"
Court, nor would that Court have the power to send back
the issues again for trial, as Judge Tuck mistakenly, it is
believed, supposes by analogy to the sending of issues from
Chancery. See *Vanness vs. Vanness*, 6 *Howard*, 62. The
power to grant new trials, as in other cases, is expressly
conferred on the Court of Law alone. 1 *Code, p.* 674, *sec.*
250, (*p.* 667, *sec.* 224.)

The above case of *Vanness vs. Vanness* shows, that no
bill of exception would lie to this interlocutory proceeding
but for the Act of 1832, ch. 208. This Act was obtained
to enable the Court of Appeals to take jurisdiction in the
celebrated case of *Davis vs. Calvert*, 5 *G. & J.* And it is
adopted in 1 Code, p. 20, sec. 5. It is therefore manifest
by the Code, that the power of the Court of Law over the
trial of these issues, is the same as if they had originated
in that Court. And would it be doubted that in an ordi-
nary suit, the question of the legal sufficiency of a verdict
was examinable on appeal ? The jurisdiction of this Court
is not affected by the fact that some of the grounds of the
motion were appeals to the discretion of the Court. Being
ignored by the judge, and his opinion resting alone on the
record, it raises a legal question as competent for this
Court to decide as any other.

In 7 *Howard, p.* 191, it is said, that "in deciding a
matter of discretion a point may arise which is one of
right and very material." No one can doubt that if the
verdict was really defective and repugnant, and the judge
had refused the new trial, the appellees could have excepted
and carried up the legal sufficiency, as was done and sanc-
tioned in *Browne vs. Browne*, 22 *Md. Rep.*, 103; and if so, the
right must be reciprocal when the decision is adverse to us.
The distinction between a new trial in the discretion of the
Court, and *"a venire de novo"* for matter of law, is fully
shown in *State vs. Tilghman*, 11 *Iredell Rep.*, 553. *State*

*vs. Miller*, 1 *Dev. & Bat.*, 500. And especially see *Ev.* *Pr.*, 327, &c.

This, therefore, is the case where a *venire* is granted for matter of record purely, and for no other reason. Why cannot this Court pass its opinion on this matter of record as well as the judge below ?

The case of *Howard vs. Waters*, 19 *Md. Rep.*, 534, stands on different grounds altogether. The appoinment of the trustee in that case was exclusively in the discretion of the Court, and it mattered not for what reason the appointment was made by the Court, there could be no appeal. The case would be in point if Judge TUCK had granted the new trial in the exercise of his discretion upon the evidence; but that is not our case, the Judge has attempted to set aside a verdict as recorded, for imperfection on its face, and by way of *venire facias de novo*, and an appeal always lies in such a case. It is true, as a general rule, that the action of Courts on new trials, amendments and other matters dependent on their discretion, are not examinable on error, but it will not do to be led away by generalities. There are exceptions and distinctions which must be considered at all times.

In cases of *mandamus*, Courts will not control the discretion of an officer, but they will compel him to exercise it, and where he erroneously declares that he has no discretion, the Courts will review his action, and force him to exercise the discretion conferred on him, as fully decided in 24 *How. Prac. Rep.*, 123–5. 14 *East.*, 394. The same principle has been applied to other cases, and to new trials. 1 *Iredell*, 106. 4 *Jones*, 472. 7 *How.*, 191.

If Judge TUCK be really in error in supposing that the Orphans' Court cannot pass judgment on this verdict, why cannot this Court correct that error in its appellate character? And if the judge is right when he supposes the Orphans' Court can pass no judgment, it results that the

caveators, as well as the caveatees, could move for a new *venire* because of the mistrial. It therefore ranges, not under the head of new trials, where the verdict is against one party, and may be set aside in the discretion of the Court, but it is the case of a mistrial by reason of a defective verdict, and this Court has jurisdiction, as decided in *State vs. Sutton*, 4 *Gill*, 497. *Ford vs. The State*, 12 *Md. Rep.*, 514.

But the very question has been settled by this Court in the case of *Browne vs. Browne*, 22 *Md. Rep.*, 103. In that case, after the trial of special issues sent from the Orphans' Court and the finding of a verdict, the plaintiff moved a new trial on four grounds, three addressed to the discretion of the Court, and based on the weight of evidence and the misconduct of the jury, and the fourth based on the alleged insufficiency of the verdict. The Court of Appeals, while declining to control the discretion of the Court on the first three grounds of the motion, examined into and reviewed the sufficiency of the verdict and affirmed it. The case of *Browne vs. Browne*, therefore, settles the appellate powers of this Court to review all questions touching the alleged insufficiency of a recorded verdict, involving, as it does, the question of a mistrial. Writs of error for defects in the verdict have always been entertained, and *venire facias* awarded by Appellate Courts. See 1 *Graham & Wat. New Trials, pages* 136, -7, -8, 140, 144, -5, 148. 5 *Cranch*, 19.

II. It is now submitted, that the conclusion of the learned judge below, that there was an inconsistency in the findings of the jury on the first and fourth issues, is erroneous. The issues in this case follow substantially the forms that have been observed in this State, particularly the first and fourth, which seem to have been literally copied from some of the cases in the reports. *Ramsey vs. Glass*, 9 *Gill*, 57. *Pegg vs. Warford*, 4 *Md. Rep.*, 387. *Davis vs. Calvert*, 5 *G. & J.*, 299. *Browne vs. Browne*, 22 *Md. Rep.*, 103.

The will in the present case was assailed on the grounds: 1st. That the mind of the testator was unsound and wanting in testamentary capacity.   2nd. That conceding his mind to have been capable of making a will, yet, by the influence and actions of others, it was so controlled as to deprive him of free agency.   Hence, the first issue submitted simply to the jury the question, whether he had a sound and disposing mind.   If the jury had found affirmatively on that issue, then the question would have been presented, whether third parties so controlled and influenced this sound and disposing mind as to render its action invalid.   But the jury having found that he had no sound and disposing mind, found the other and necessary consequence, that third parties did not influence a mind that had no existence.   These two findings are strictly and logically correct.   If a man be blind, can it be said that a wall prevents him from seeing? if deaf, that the rattle of machinery prevents him from hearing?   Influence presupposes an intelligent mind to be acted on, not the blank void of idiocy; it requires for its reception the reasoning apprehension of a mind possessing a higher grade of intelligence than the instinct of brutes.   When the jury found that the mind of the testator had ceased to exist, or had never existed, how could it affirm, as a fact, that this non-entity was still endowed with sufficient reason to be subject to the influence of intelligent minds?   The principle of law is, that "Courts will always so mould and construe a verdict as to make it legal if possible, and never put a construction otherwise if the words will bear it."   *Fisher vs. Kean,* 1 *Watts Rep.*, 261.

Now it is perfectly manifest, that all of these issues, except the first, were designed to ascertain whether the execution of the will was obtained by fraud, undue influence, &c.   Looking at the issues, no one can doubt that the jury meant to decide the case on the mental incapacity of the

testator, and finding that, to find all other issues for the caveators. It is argued by the learned judge, that the jury in these two findings have contradicted themselves. It might be suggested, on the other hand, that there would have been more room to charge self contradiction if the jury had found both of these issues for the caveators. Finding the fourth issue for the caveatees, Judge Tuck translates or construes the finding to be, "that the said paper, and the execution thereof, was his free and voluntary act, to which he was induced with a knowledge of its contents, and without the exercise of a dominion or influence by some person or persons, which prevented, in his then condition, the exercise of a sound discretion." And he asserts, that "it is next to impossible to say of the same man, that at that time, and in making and executing such a paper, he had not sufficient capacity," &c. He then asserts, substantially, "that this fourth issue presents the double question of undue influence and mental capacity." If the judge be right, and the fourth issue, to be found affirmatively for us, required the jury to find both incapacity and undue influence, it logically results that it should be found for the caveatees if both propositions were not made out, as the jury certainly could not apportion the issue and find affirmatively the mental incapacity, and negatively the undue influence. The issue is intended to be found, yea or nay, and yet Judge Tuck's reasoning would require the jury to find a special verdict on a special issue, meant to embrace but one proposition and to be responded to by an affirmative or negative answer. What is the essential proposition of the fourth issue, and what does it require as conditions precedent to a finding under it in favor of the caveators? To give us the verdict on that issue, the jury must find all of the following facts: 1st. That the paper was not the free and voluntary act of the testator. 2nd. That he was induced to execute it without a knowledge of its contents.

3rd. That the same was executed by Tilghman Waters under the exercise of a dominion or influence by some person or persons, which prevented, in his then condition, the exercise of a sound discretion. It results, that if any one of these conditions were found against the caveators, the verdict must properly be for the defendants. Why the very issue, in its final clause, assumes that the testator had legal discretion, if left free of influence and dominion, for it enquires whether that "dominion or influence prevented, in his then condition, the exercise of a sound discretion;" and yet Judge Tuck understands this issue to involve both undue influence and testamentary capacity, and he says the Orphans' Court so intended it. Indeed, he regards it as equivalent to the issue of *devisavit vel non,* thus reaching the conclusion that the Orphans' Court, as well as the jury, had stultified itself, for it would have been the grossest folly to send six issues, when one of them alone covered all the others, and every other conceivable ground of assault on the will.

Judge Tuck, in his unintentional but practical assault upon the Orphans' Court as well as the jury, inadvertently overlooked the numerous precedents in our reports where this issue has been introduced with other special issues. If he had looked at the fourth issue in *Pegg vs. Warford,* 4 *Md. Rep.,* 387, he would have seen the original of our fourth issue. Surely no one on the bench or at the bar ever before supposed that such an issue was but a paraphrase for *"devisavit vel non."*

In *Davis vs. Calvert,* 5 *G. & J.,* 298, 299, the Court of Appeals expressly say that the third issue there, tantamount to our fourth issue, relates to undue influence.

But independent of all this, we take issue with Judge Tuck's definition of testamentary capacity. He says, that the jury in finding the fourth issue for caveatees, find "that the testator had sufficient capacity to make a disposition,"

&c., "with judgment," &c.; and, therefore, this finding contradicts the first issue under which the jury find that Tilghman Waters was not of sound and disposing mind, and capable *of executing a valid deed or contract,*" which is the sole standard of testamentary capacity in Maryland, as ruled in *Davis vs. Calvert,* 5 *G. & J.,* 269.

Now, by what inductive process can Judge Tuck arrive at the conclusion, that under this fourth issue the jury found the testator capable of making a valid deed or contract in opposition to their first finding? A free and voluntary act and knowledge of its contents, although accompanied with freedom from dominion and influence, do not amount to a testamentary capacity in Maryland, as Judge Tuck supposes, for the Code expressly says, the testator must, in addition to a sound and disposing mind, be "capable of executing a valid deed or contract."

Cochran, J., delivered the opinion of this Court.

This is an appeal from a decision of the Court below upon a motion for a new trial, and an examination of the record has satisfied us that the motion to dismiss should be sustained.

The issues upon which these proceedings were had, were made up in the Orphans' Court, and transmitted to a Court of Law for trial; and although they were still to be dealt with as within the probate powers of the Orphans' Court, the verdict upon them was nevertheless to be found in accordance with principles applicable to the trial of issues joined in the usual course of proceedings in Courts of Law. 14 *Md. Rep.,* 532. 9 *Gill,* 56. The provisions of the Code, authorizing the transmission of issues to the Courts of Law for trial, were not intended to restrict or qualify the general powers of those Courts, but to secure a trial of such issues subject to the exercise of those powers; and it was, therefore, the duty of the Court below, in

trying the issues contained in this record, to exercise its powers, both legal and discretionary, according to the exigencies of the case. It is true that Art. 5, sec. 5, of the Code, provides, that *"exceptions may be taken to any opinion given by the Court before whom issues from the Orphans' Court may be tried and an appeal taken;"* but this clause cannot be so construed as to qualify or restrict any power of the Court to which issues may be sent, a result that would necessarily follow if rulings upon matters resting in discretion could be reached by exceptions, and made the subject of review on appeal. This provision, as we understand it, was intended simply to confer a right of exception and appeal corresponding in its essential particulars with the right as it existed in actions at law ; and thus construed, the question, as to the appellant's right of review, necessarily depends upon the principles and rules applicable to a like state of case in an action at law.

The motion for a new trial, the granting of which constitutes the ground of this appeal, was addressed to the sound discretion of the Court; and, according to the general current of authority, the granting or refusal to grant it, was a matter resting altogether in the Court's discretionary power. This power is an equitable one in its nature, and its exercise is always presumed to be in accordance with the requirements of justice.

Where a verdict is found upon evidence not legally admissible, or upon a misdirection of the Court, and it can be seen, upon a consideration of the whole case, that the verdict is inequitable, the Court may, upon motion, set the verdict aside and grant a new trial ; but if the verdict is substantially right and accords with the real merits of the case, the Court may, without regard to antecedent mistakes in law or fact, refuse a new trial and let the verdict stand. The granting of a motion for a new trial cannot be demanded as a matter of right, for whatever objections may be made

Waters et al. *vs.* Waters et al.

to a verdict, it is clear, upon authority, that the objections relied on must be aided by some inference of a failure of justice of which the Court, before which the case was tried, alone can judge, to justify the exercise of its discretionary power over the verdict. The power to set aside a verdict upon such a motion, rests upon considerations altogether behind mere legal objections to the verdict; and it is upon this ground that the motion goes to the discretion of the Court, and that the action upon it cannot be assigned for error upon appeal, or writ of error. It is upon this ground, also, that the motion for a new trial is distinguishable from a motion in arrest, or for a *venire facias de novo*. The latter motions go to legal defects in the verdict, or the record, and they call for determination according to the rules and principles of law applicable to them. The case of *Browne vs. Browne*, 22 *Md. Rep.*, 103, fully sustains these views. The appellant in that case, after a motion for a new trial had been overruled, then moved the Court to "*set aside the verdict and not transmit the same to the Orphans' Court.*" The last motion suggested certain legal defects in the verdict, and was substantially a motion in arrest; and this Court, while it decided that the action of the Court below on the motion for a new trial could not be reviewed on appeal, did review and decide the question as to the legal sufficiency of the verdict raised by the motion to set it aside and not transmit it.

We have found no sufficient reasons for qualifying, in any degree, the views expressed in the case of *Howard vs. Waters*, 19 *Md. Rep.*, 529, and referring to them in support of the conclusions reached in this case, shall dismiss the appeal.

*Appeal dismissed.*

(Decided November 27th, 1866.)